UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kevin Brown, et al.

          v.                        Civil Nos. 16-cv-242-JL
                                               16-cv-243-JL
                                    Opinion No. 2016 DNH 213
Saint-Gobain Performance
Plastics Corp., et al.


**MEMORANDUM ORDER**


Resolution of the plaintiffs' motions to remand these
environmental trespass actions to state court turns on whether
these actions amount to "local controversies" under the Class
Action Fairness Act (CAFA).  See 28 U.S.C. § 1332(d)(4)
Plaintiffs filed two purported class actions in Hillsborough
Superior Court against Saint-Gobain Performance Plastics Corp.
and Gwenael Busnel, general manager for Saint-Gobain's facility
in Merrimack, New Hampshire, alleging damages from chemical
contamination from that facility.[1]  The defendants timely removed
the actions, citing this court's jurisdiction under CAFA.  See
28 U.S.C. § 1332(d)(2).  Plaintiffs subsequently moved to remand

---

[1] Though the plaintiffs base both purported class actions on the
same allegedly-culpable conduct by the defendants, they propose
different (albeit somewhat overlapping) classes and seek
different damages through each case.

both actions to the Superior Court, arguing that they satisfy the local-controversy exception.

The court denies the plaintiffs' motion.  Though the plaintiffs make a strong showing on several elements of the exception, several lawsuits filed in New York and Vermont "during the 3-year period preceding the filing of" these actions prevent the exception from applying here.  See id. § 1332(d)(4).

## I.   Background

This proposed class action arises out of the release of toxic chemicals from Saint-Gobain's manufacturing plant in Merrimack, New Hampshire.  Saint-Gobain has owned and operated a plant in Merrimack since 2003.  In early 2016, the New Hampshire Department of Environmental Services discovered the presence of Perfluorooctanoic acid (PFOA) in residential wells in the plant's vicinity and recommended that certain residents of surrounding cities and towns not drink or cook with water from those wells.  The United States Environmental Protection Agency considers PFOA "likely to be carcinogenic to humans."[2]

The plaintiffs filed two suits in Hillsborough Superior Court against Saint-Gobain and the plant's general manager as a result of the PFOA contamination.  In the first, they contend that the presence of PFOA in private wells and soil on the class

---

[2] First Amended Compl. (no. 16-cv-243, doc. no. 1-1) ¶ 33.

members' properties has decreased the value of those properties, and seek damages accordingly.[3]  In the second, they contend that the presence of PFOA has the potential to damage the class members' health, and seek to have Saint-Gobain cover the costs of medical monitoring for class members.[4]

The defendants timely removed both cases to this court under CAFA's jurisdictional provisions.  The plaintiffs now ask the court to remand both cases, citing an exception to that jurisdiction in cases of distinctly local character.  See 28 U.S.C. § 1332(d)(4)

## II.  Analysis

### A.   CAFA jurisdiction

The Class Action Fairness Act (CAFA) gives district courts "original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of § 5,000,000, . . . and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2)(A).  The parties agree that these requirements are satisfied.

In seeking to remand the actions, the plaintiffs invoke CAFA's "local-controversy exception," which mandates that "[a]

---

[3] First Amended Compl. (no. 16-cv-242, doc. no. 1-1) ¶¶ 44-46, E.

[4] First Amended Compl. (no. 16-cv-243, doc. no. 1-1) ¶¶ 46-47, D.

district court shall decline to exercise jurisdiction" under

CAFA

> (i) over a class action in which—
>
>> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>>
>> (II) at least 1 defendant is a defendant—
>>
>>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>>
>>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>>
>>> (cc) who is a citizen of the State in which the action was originally filed; and
>>
>> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]

28 U.S.C. § 1332(d)(4)(A).  If these conditions are met, this

court is required to remand the action to the originating state

court.

Plaintiffs, as the parties seeking remand, bear the burden

of demonstrating, by a preponderance of the evidence, that the

local-controversy exception to CAFA applies in these actions.

In re Hannaford Bros. Co. Customer Data Sec. Breach Litig., 564

F.3d 75, 78 (1st Cir. 2009); see also Padilla-Mangual v. Pavia
Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (applying preponderance
standard to questions of diversity jurisdiction).  Because the
defendants invoke CAFA as the basis of this court's
jurisdiction, the plaintiffs do not enjoy any presumption
against removal.  Dart Cherokee Basin Operating Co. v. Owens,
135 S.Ct. 547, 554 (2014) ("[N]o antiremoval presumption attends
cases invoking CAFA, which Congress enacted to facilitate
adjudication of certain class actions in federal court.").  The
court resolves any doubt as to whether the exception applies
against the parties seeking remand.  Westerfield v. Independent
Processing, LLC, 621 F.3d 819, 823 (8th Cir. 2010) ("the party
bearing the burden of proof is not entitled to the benefit of
the doubt").

     The plaintiffs argue that the court should look to their
Second Amended Complaints, filed after these cases were removed,[5]
to decide whether they have met their burden.[6]  This is contrary
to the general rule that "the Court looks to the complaint as

---

[5] The plaintiffs filed their Second Amended Complaints as of
right.  See Fed. R. Civ. P. 15(1)(B).

[6] See Reply (no. 16-cv-242, doc. no. 25-1) at 7-10.  The parties
filed substantially identical memoranda in support of and in
response to plaintiffs' motion in both actions.  For sake of
convenience, the court cites only to those filed in civil action
no. 16-cv-242.

filed at the time that the case was removed" when deciding whether remand is appropriate. Premo v. Family Dollar Stores of Mass., Inc., No. 13-11279-TSH, 2014 WL 1330911, at *2 (D. Mass. Mar. 28, 2014) (citing Cavallini v. State Farm Auto Life Ins. Co., 44 F.3d 256, 264 (5th Cir.1995)).

> Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved.

Cavallini, 44 F.3d at 264. The weight of authority supports following this approach in cases removed under CAFA. In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98, 101-02 (2d Cir. 2015) ("Since a post-removal amendment does not defeat federal jurisdiction premised on a federal question or on diversity, we cannot see why it would defeat federal jurisdiction under CAFA."); Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C., 768 F.3d 425, 427-29 (5th Cir. 2014) ("the time-of-removal rule prevents post-removal actions from destroying jurisdiction that attached in a federal court under CAFA"); In re Burlington Northern Santa Fe Ry. Co., 606 F.3d 379, 380-81 (7th Cir. 2010) ("CAFA is, at base, an extension of diversity jurisdiction. Even in cases filed originally in federal court, later changes that compromise diversity do not destroy jurisdiction."); see also Reece v. AES Corp., 638 Fed. Appx.

755, 775 (10th Cir. 2016) (unpublished) (affirming district court's denial of motion to amend class definition to satisfy local-controversy exception); but see Kaufman v. Allstate New Jersey Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009) ("the local controversy exception requires consideration of the defendants presently in the action"); Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1117 (9th Cir. 2015) (when plaintiffs "amend the complaint to explain the nature of the action for purposes of our jurisdictional analysis, we may consider the amended complaint to determine whether remand to the state court is appropriate").

This court is inclined to follow the traditional rule in this action, but need not conclusively decide the issue here. Furthermore, to the extent that the plaintiffs allege new facts in the Second Amended Complaints, they merely elaborate on points already raised in the First Amended Complaints. Specifically, the plaintiffs' Second Amended Complaints provide more detailed allegations concerning:  (1) the responsibilities associated with Busnel's position[7]; (2) Busnel's alleged negligence in failing to test for PFOA[8]; (3) the detection of

---

[7] Second Amended Compl. (no. 16-cv-243) ¶¶ 23, 35, 38-39.  The Second Amended Complaint in civil action no. 16-cv-242 includes substantially the same allegations.

[8] Id. ¶¶ 36-37, 40, 43.

PFOA in the vicinity of Saint-Gobain's plants in New York and Vermont and defendants' knowledge thereof[9]; and (4) when the defendants reported contamination around the Merrimack site.[10] Because these additional details merely elaborate on facts alleged in the First Amended Complaints,[11] the amendment would not alter the court's jurisdictional analysis.

## B.   Applicability of the local-controversy exception

In the context of diversity jurisdiction, the First Circuit Court of Appeals requires the party bearing the burden of proving jurisdiction to do so by proving the facts supporting jurisdiction -- such as the citizenship of the parties -- by a "preponderance of the evidence." Padilla-Mangual, 516 F.3d at 31 (citing Bank One, Tex., N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992)).  The Fifth Circuit Court of Appeals, which invokes the same rule in the diversity context, has also concluded that parties moving to remand a case under an exception to CAFA must

---

[9] Id. ¶¶ 33-34, 41

[10] Id. ¶ 42.

[11] Specifically, the plaintiff alleged in the First Amended Complaint that:  (1) Busnel was the General Manager of the Merrimack plant, First Amended Compl. (no. 16-cv-243) ¶¶ 8, 22; (2) Busnel allegedly violated a duty to operate the Merrimack plant in a safe and reasonable manner, id. ¶¶ 8, 31, 40; (3) PFOA had been detected in the vicinity of Saint-Gobain's New York and Vermont facilities, id. ¶¶ 29-30; and (4) elevated PFOA levels were detected around the Merrimack facility, id. ¶¶ 35-36.

do likewise.  Preston v. Tenet Healthsystem Mem'l Med. Ctr.,
Inc., 485 F.3d 793, 797 (5th Cir. 2007).  This court does the
same here.

The defendants concede that this action satisfies two of
the local-controversy exception requirements:  (1) that
defendant Busnel is a New Hampshire citizen, see 28 U.S.C.
§ 1332(d)(4)(A)(i)(II)(cc), and that the principal injuries
occurred in New Hampshire, see id. § 1332(d)(4)(A)(i)(III).
They dispute whether the plaintiffs have satisfied the remaining
requirements.  As discussed more fully below, though the
plaintiffs likely have satisfied most of the local controversy
elements, the fact that several cases alleging similar facts
were filed in New York and Vermont during the three years prior
to these actions defeats their motion to remand.

### 1.   Other class actions - § 1332(d)(4)(A)(ii)

To satisfy the local-controversy exception, the plaintiff
must demonstrate that "during the 3-year period preceding the
filing of th[is] class action, no other class action has been
filed asserting the same or similar factual allegations against
any of the defendants on behalf of the same or other persons."
28 U.S.C. § 1332(d)(4)(A)(ii).  The plaintiffs' failure to do so
precludes remand under the local-controversy exception in both
of the plaintiffs' actions.

As the defendants point out, five other putative class
actions have been filed against Saint-Gobain in New York and
Vermont within the last three years.[12]  There is no dispute that
these actions were filed by "other persons" and assert
allegations against "any of the defendants."[13]  The only question
the court must address, then, is whether the factual allegations
of these five previously-filed actions are similar to the
allegations in the actions before this court.  The court
concludes that they are.

Painted with a broad brush, the similarities between the
New York and Vermont cases and the cases before this court are
striking.  In all seven cases, the plaintiffs allege that:
(1) PFOA is a hazardous substance, pollutant, and/or toxic
chemical, as well as a threat to the environment and harmful to

---

[12] Sullivan v. Saint-Gobain Performance Plastics Corp., No. 16-
cv-125 (D. Vt. filed May 6, 2016); Baker v. Saint-Gobain
Performance Plastics Corp., No. 16-cv-220 (N.D.N.Y. filed Feb.
24, 2016); Tifft v. Saint-Gobain Performance Plastics Corp.,
No. 16-cv-292 (N.D.N.Y. filed Mar. 10, 2016); Hickey v. Saint-
Gobain Performance Plastics Corp., No. 16-cv-394 (N.D.N.Y. filed
Apr. 6, 2016); Schrom v. Saint-Gobain Performance Plastics
Corp., No. 16-cv-476 (N.D.N.Y. filed Apr. 26, 2016).

[13] The previously-filed actions must also have been filed "on
behalf of the same or other persons."  This requirement is
easily satisfied:  any previously-filed action must necessarily
have been filed by the same persons who filed the present action
or "other persons."  If serving no other purpose, this language
emphasizes that an action need not be filed by or on behalf of
the same purported class of plaintiffs to meet the criteria set
forth in this section.

humans; (2) Saint-Gobain released PFOA into the environment;
(3) it did so intentionally, willfully, and/or maliciously;
(4) water supplies in the vicinity of a Saint-Gobain plant
tested positive for PFOA; (5) residential wells and/or municipal
water supplies were affected, leading residents to use bottled
water; (6) PFOA in private wells devalued properties in the area
of contamination; and (7) plaintiffs will require long-term
medical monitoring to detect illnesses caused by the PFOA
contamination.[14]

The plaintiffs argue that, despite these similarities, the
New York and Vermont cases against Saint-Gobain do not contain
"the same or similar factual allegations" as these actions
because the New York and Vermont cases do not address any harm
caused in New Hampshire by the Merrimack plant.[15]  The statute
does not require, however, that the claims in both cases be
identical or nearly identical, nor that they arise out of the
same occurrence or under the law of the same state, nor that the
plaintiffs be citizens of the same state.  It focuses instead on
the "factual allegations" made against the common defendant, and
requires only that they be "similar."  Courts have found such
similarities where plaintiffs alleged nearly identical conduct

---

[14] See Surreply, App'x B (no. 16-cv-242, doc. no. 27-2).

[15] See Reply (no. 16-cv-242, doc. no. 25-1) at 11.

by the same defendant in different states resulting in the same injury to different plaintiffs.  See Torre v. CleanNet, U.S.A., Inc., No. CIV.A. 14-2818, 2014 WL 5591037, at *10 (E.D. Pa. Nov. 4, 2014) (similar facts where both actions alleged misconduct by a common national defendant against franchisees, despite additional, local defendants and claims under different state laws); Brook v. UnitedHealth Grp. Inc., No. 06 CV 12954, 2007 WL 2827808, at *4 (S.D.N.Y. Sept. 27, 2007) (similar facts alleged where "virtually identical" class actions were filed in Connecticut and New York, but classes were limited to physicians of their respective states); but see Anderson v. Hackett, 646 F. Supp. 2d 1041, 1051 (S.D. Ill. 2009) (factual allegations not "the same or similar" where defendant's actions contaminated two different tracts of land).  So it is here:  the plaintiffs in the New York, Vermont, and New Hampshire actions allege that their claims arise from effectively the same conduct by Saint-Gobain, albeit conduct affecting different plaintiffs and different localities.  This renders the factual allegations sufficiently similar to meet this requirement.  The plaintiffs have therefore not carried their burden of demonstrating that no other class action has been filed during the preceding three-year period "asserting the same or similar factual allegations

against any of the defendants on behalf of the same or other
persons."[16] 28 U.S.C. § 1332(d)(4)(A)(ii).

### 2.   Local plaintiffs - § 1332(d)(4)(A)(i)(I)

Though the plaintiffs' failure to satisfy the "other
lawsuits" element of the local-controversy exception disposes of
their motion, the court considers, for the sake of thoroughness,
whether the plaintiffs have satisfied the exception's other
elements.

In order to demonstrate a local controversy, the plaintiffs
must also show that "greater than two-thirds of the members of
all proposed plaintiff classes in the aggregate are citizens of"

---

[16] The court also considered -- and requested additional briefing
from the parties on -- whether the fact that the plaintiffs
filed two suits alleging the same facts against the same
defendants on the same day required remand of the later-filed
suit, should the court find all other elements in the
plaintiffs' favor.  See no. 16-cv-242, doc. nos. 33, 34; no. 16-
cv-243, doc. nos. 33, 34.  Courts applying this element of the
local-controversy exception "to two actions filed the same day
have looked to which action was filed first, and concluded that
under the plain language of the statute, the first-filed action
was filed within three years preceding the filing of the second
action, such that the court lacks jurisdiction over the first-
filed action but not the second." Bridewell-Sledge v. Blue
Cross of Cal., No. CV 14-04744 MMM CWX, 2015 WL 179779, at *5
(C.D. Cal. Jan. 14, 2015), aff'd, 798 F.3d 923 (9th Cir. 2015).
The defendants assert that such is the case here; the plaintiffs
contend that, because the suits were filed at precisely the same
time, neither qualifies as a previously-filed action.  The court
ultimately need not address this question, having concluded that
the New York and Vermont actions satisfy this requirement and
prevent application of the local-controversy exception to these
actions.

New Hampshire.  28 U.S.C. § 1332(d)(4)(A)(i)(I).  As in the
context of diversity jurisdiction, citizenship may be equated
with domicile -- that is, "the place where an individual 'has
his true, fixed home and principal establishment, and to which,
whenever he is absent, he has the intention of returning.'"
McMorris v. TJX Companies, Inc., 493 F. Supp. 2d 158, 162 (D.
Mass. 2007) (quoting Valentin v. Hosp. Bella Vista, 254 F.3d
358, 366 (1st Cir. 2001)).  The plaintiffs' allegations, and the
evidence they submitted in support of their motion to remand,
suggests that they have satisfied this element with respect to
one of the actions here but not with respect to the other.

Plaintiffs have brought two actions, proposing two
different -- but overlapping -- classes of injured plaintiffs.
One class comprises "[a]ll persons who own residential
properties with private groundwater wells within two miles of
the property boundary of the Saint-Gobain site."[17]  This proposed
class is limited to current property owners.  The plaintiffs
have submitted evidence suggesting that over 90% of residential
property owners within that two-mile radius reside in New
Hampshire.[18]  While a party's residence in a state alone does not

---

[17] First Amended Compl. (no. 16-cv-242, doc. no. 1-1) ¶ 11.

[18] Plaintiffs present a summary of information on property
ownership and residence drawn from various tax assessors'
offices through an affidavit from two of their attorneys.  See
Affidavit (no. 16-cv-243, doc. no. 26-2).  Defendants contend

establish domicile and, accordingly, citizenship, see Valentin, 254 F.3d at 366 (residence is not equivalent to citizenship), that over 90% of those property owners also reside within the state (even if they do not live at the property owned) strongly supports an inference that at least two-thirds of that number are New Hampshire citizens.[19]

The plaintiffs' evidence presents a murkier picture for the proposed class seeking medical monitoring relief. That proposed class comprises "[a]ll persons who reside or have resided on residential properties with private groundwater wells within two

---

that this affidavit amounts to attorney argument, which does not constitute evidence. See Intercity Maint. Co. v. Local 254, Serv. Emps. Int'l Union AFL-CIO, 241 F.3d 82, 88 n.4 (1st Cir. 2001); Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 704 n.5 (1st Cir. 1979). White there may have been more appropriate means of presenting the evidence in question, the defendants do not challenge the affiants' personal knowledge of the information they reviewed and summarized, and so the court will consider it for purposes of resolving the instant motion.

[19] The defendants contend that the plaintiffs have not demonstrated that New Hampshire citizens own at least two-thirds of the properties with private groundwater wells. See Surreply (no. 16-cv-242, doc. no. 27) at 8-9. The plaintiffs have offered evidence, however, showing that over 89% of properties in Litchfield where the New Hampshire Department of Environmental Services tested groundwater wells for PFOA are owned by New Hampshire residents; that 85% of the wells tested in Merrimack exist on property owned by New Hampshire residents; and that at least 90% of residences with private wells in Bedford are owned by New Hampshire residents. See Affidavit (no. 16-cv-242, doc. no. 25-2) at 2. Given such high percentages of properties owned by New Hampshire residents, it is a reasonable inference that New Hampshire residents own at least two-thirds of properties with wells.

miles of the property boundary of the Saint-Gobain site."[20]   As such, it would comprise individuals who currently reside within that two-mile radius, as well as those who resided there during the limitations period[21] but do so no longer.  Given the geographical strictures around the class composition, it appears likely that at least two-thirds of the former are New Hampshire citizens.  The plaintiffs offer no evidence, however, concerning how many former-resident class members there may be or, of those, how many remain New Hampshire citizens.  Though probable that two-thirds of this class would consist of New Hampshire citizens, the plaintiffs -- having offered no evidence indicating the number or citizenship of former-resident class members -- have not carried their burden of showing the citizenship of the medical monitoring class.

### 3.   Local defendant criteria - § 1332(d)(4)(A)(i)(II)

For the local-controversy exception to apply, the plaintiffs must also demonstrate that at least one defendant is a New Hampshire citizen, "from whom significant relief is sought" by the plaintiff class and "whose alleged conduct forms

---

[20] First Amended Compl. (no. 16-cv-243, doc. no. 1-1) ¶ 11.

[21] At oral argument, plaintiffs' counsel indicated that the class would be circumscribed by the statute of limitations, which is two years for willful trespass and three years for personal injury and property damage.  N.H. Rev. Stat. Ann. § 508:4, I; id. § 539:8.

a significant basis for the claims" they have asserted.  28
U.S.C. §§ 1332(d)(4)(A)(i)(II)(aa)-(cc).  Neither CAFA itself
nor the First Circuit Court of Appeals has provided guidance on
what amounts to "significant relief" and what conduct amounts to
a "significant basis."  However, courts that have addressed
similar issues "have required that the conduct of an allegedly
'significant defendant' must be significant in relation to the
conduct alleged against other defendants in the complaint, and
that the relief sought against that defendant is a significant
portion of the entire relief sought by the class."  Manson v.
GMAC Mortgage, LLC, 602 F. Supp. 2d 289, 295 (D. Mass. 2009)
(Stearns, J.) (internal quotations omitted).

     Here, the plaintiffs level their substantive claims --
trespass, nuisance, negligence, unjust enrichment and strict
liability -- at both Saint-Gobain and Busnel.[22]  The plaintiffs
allege that Saint-Gobain has owned and operated the Merrimack
plant since 2003, and that Saint-Gobain owned the prior
operator, ChemFab, between 2000 and 2003.  They further allege
that Busnel was the "General Manager for Saint-Gobain at its
Merrimack, New Hampshire facility," and that "at all times

---

[22] They bring only two claims against Saint-Gobain alone -- one
for liability under a theory of respondeat superior for the
actions of Saint-Gobain's employees, including Busnel's actions,
and a claim for exemplary damages.

relevant" to this action, he "had a duty to operate [the Merrimack plant] in a safe and reasonable manner, in conformance with the laws and had a duty not to allow chemicals used in the [p]lant to contaminate the Plaintiffs' and Class Members' property."[23]   The parties agree that Busnel, a New Hampshire citizen, served as Plant Manager of the Merrimack plant between 2012 and February 2016.[24]   As discussed below, the plaintiffs' allegations against and relief sought from Busnel render him a significant defendant for purposes of the local-controversy exception in the action seeking to recover for damages to property values, but may not be sufficient with respect to the medical monitoring action.

### a)   "Substantial basis"

In determining whether Busnel's alleged conduct forms a "substantial basis" for the plaintiffs' claims, the court compares Busnel's alleged conduct to that of all other defendants -- here, Saint-Gobain.  "If the local defendant's alleged conduct is a significant part of the alleged conduct of

---

[23] First Amended Compl. (no. 16-cv-242, doc. no. 1-1) ¶ 8.

[24] Plaintiffs submit, via a copy of Busnel's profile page on LinkedIn, a social media platform for professional networking, that he began managing the Merrimack plant in 2010.  See Appendix J (no. 16-cv-242, doc. no. 18-12).  This document suggests that Busnel has worked as a plant manager for Saint-Gobain since 2010, but does not indicate when he ceased managing the "Worcester plant" and began managing the plant in Merrimack.

all the Defendants, then the significant basis provision is
satisfied.  Whether this condition is met requires a substantive
analysis comparing the local defendant's alleged conduct to the
alleged conduct of all the Defendants."  Kaufman, 561 F.3d at
156.  Such a comparison reveals that plaintiffs have
demonstrated that Busnel's activities served as a substantial
basis for the plaintiffs' claims in their action seeking
recovery for property damages, but have not made so strong a
showing in the medical monitoring action.

In the complaint operative at the time of removal, the
plaintiffs alleged that Busnel:  (1) was the general manager for
Saint-Gobain at its Merrimack facility "at all times relevant
hereto" and (2) had a duty to operate that facility "in a safe
and reasonable manner, in conformance with the laws," and "not
to allow chemicals used in the Plant" to contaminate surrounding
properties.[25]  The plaintiffs then describe the actions of "the
defendants" that allegedly gave rise to their claims --
specifically, that the defendants used PFOA, a hazardous
substance, at the Merrimack facility, released it into the
environment, and thereby contaminated water in the surrounding

---

[25] First Amended Compl. (no. 16-cv-242, doc. no. 1-1) ¶ 8; First
Amended Compl. (no. 16-cv-243, doc. no. 1-1) ¶ 8.

area.[26]  They level all four of their substantive claims against both defendants, seeking to recover from Saint-Gobain alone only for exemplary damages (count 6) and on a theory of respondeat superior (count 5).  As discussed supra, Part II.A, the Second Amended Complaint, though elaborating on Busnel's job duties as a General Manager, likewise charges him with the same offenses as Saint-Gobain.[27]  Insofar as the allegedly culpable conduct imputed to Busnel is, in effect, the same as that imputed to Saint-Gobain, Busnel's conduct -- albeit not well-defined -- forms a "significant basis" of the plaintiffs' claims.

That renders these actions distinct from the decision of the Tenth Circuit Court of Appeals in Woods v. Standard Ins. Co., 771 F.3d 1257 (10th Cir. 2014), which the parties discuss at some length.[28]  There, the plaintiffs named a local insurance agent as defendant alongside the national insurance company. The Court of Appeals concluded that the agent's conduct did not constitute a significant basis for the plaintiffs' claims where "the sole basis of Plaintiffs' claims against" her was a failure

---

[26] First Amended Compl. (no. 16-cv-242, doc. no. 1-1) ¶¶ 23-24, 31, 38-43; First Amended Compl. (no. 16-cv-243, doc. no. 1-1) ¶¶ 23-24, 31, 38-43.

[27] Second Amended Compl. (no. 16-cv-242, doc. no. 17) ¶¶ 8, 23, 35-44; Second Amended Compl. (no. 16-cv-243, doc. no. 16) ¶¶ 8, 23, 35-44.

[28] This Circuit's Court of Appeals has not addressed this issue.

to disclose the insurance company's allegedly unlawful practices to state employees.  Here, plaintiffs have alleged that Busnel has significant responsibilities vis-à-vis the action giving rise to liability in this case -- that is, operation of the Merrimack plant and oversight of its emissions.  Nor is this case like Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc., 655 F.3d 358, 361-62 (5th Cir. 2011), where the Fifth Circuit Court of Appeals concluded that nothing in the complaint distinguished the actions of a bill review company from a separate insurance company, thus preventing the former's actions from forming a significant basis for the plaintiff's claims.  Here, the defendants are not unrelated entities; Busnel is, rather, alleged to be an employee and agent of Saint-Gobain tasked with managing operations of the Merrimack plant.

With respect to the medical monitoring class, though, Busnel's role as a significant defendant is undercut by the length of time that he served as the Merrimack plant's general manager.  As discussed supra Part II.B.2, the plaintiffs have not clearly defined the proposed class in their suit seeking medical monitoring for present and former residents of the two-mile radius around the facility.  Busnel's decisions as plant manager would not have impacted any potential members of that class who lived within the radius during the class period but left before his tenure began -- whether in 2010 or 2012 -- and

thus could not serve as the basis for their claims.  As also discussed _supra_, the plaintiffs offer no information on the size of this cohort.  This raises a question as to whether Busnel's actions serve as the significant basis for the claims of some unknown fraction of the medical monitoring plaintiffs.  See, e.g., Evans v. Walter Indus., Inc., 449 F.3d 1159, 1166-67 (11th Cir. 2006) (local defendant's conduct not "significant basis" where it spanned less than half of the total 85-year class period); Carter v. Allstate Ins Co., No. 12-cv-72, 2012 WL 3637239, at *10 (N.D.W. Va. Aug. 21, 2012) (local defendant's actions not a significant basis for relief where defendant was only involved for half of the class period).  In the absence of any information as to the size of that percentage from the plaintiffs, who bear the burden of proving it, the court is disinclined to consider Busnel a significant defendant with respect to the medical monitoring action.

### b)   "Significant relief"

To satisfy the "significant relief" requirement, the plaintiffs must show that Busnel is a defendant "from whom significant relief is sought by members of the plaintiff class." 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb).  Relief is significant "when the relief sought against that defendant is a significant portion of the entire relief sought by the class."  Evans, 449

F.3d at 1166-67.  One relevant measure is the proportion of the plaintiff class that could conceivably recover from that defendant.  See id., 449 F.3d at 1167 (concluding that plaintiffs did not seek "significant relief" where allegations against defendant supported right to relief for only a small portion of the class).  Applying this measure, the plaintiffs seeking a property-damage remedy appear to satisfy this requirement; those seeking medical-monitoring may not have met the same burden.

Defendants first argue that the plaintiffs have not met their burden on this element because Busnel managed the Merrimack plant for only a portion of the class period.  This would theoretically limit the percentage of the class that could recover from him.  Courts have found that plaintiffs do not seek significant relief from defendants whose involvement in the alleged conduct affected only a small percentage of the class members.  See, e.g., Busker v. Wabtec Corp., No. 15-cv-08194, 2016 WL 953209, at *7 (C.D. Cal. Mar. 14, 2016) (local defendant hired four years after the start of the events at issue was not one from whom significant relief was sought).

Defendants primarily argue that the plaintiffs cannot seek significant relief from Busnel because he, as an individual,

could not satisfy a judgment should the plaintiffs prevail.[29]
Courts are split on the issue, and the First Circuit Court of
Appeals has not weighed in.  Some courts, as the defendants have
urged this court to do, take into consideration the proposed
significant defendant's ability to pay.  See Manson, 602 F.
Supp. 2d at 296; cf. Coleman v. Estes Express Lines, Inc., 730
F. Supp. 2d 1141, 1154 (C.D. Cal. 2010), aff'd, 631 F.3d 1010
(9th Cir. 2011) (detailing origins of "ability to pay" analysis,
but rejecting such an interpretation).  Others, including the
Tenth Circuit Court of Appeals, have rejected any reliance on
such an analysis, on the basis that the statute's plain language
requires the relief that "is sought" by the class to be
significant -- not the defendant's ability to satisfy a
judgment.  See Coffey v. Freeport McMoran Copper & Gold, 581
F.3d 1240, 1245-46 (10th Cir. 2009).

This court, like those in Coffey and Coleman, finds the
statutory language unambiguous.  It requires that "at least 1
defendant is a defendant[] from whom significant relief is
sought by members of the plaintiff class . . . ."  28 U.S.C.
§ 1332(d)(4)(A)(i)(II)(aa).  It does not require that the relief
sought "may be obtained" or "can be collected" from the

---

[29] See Obj. to Mot. to Remand (no. 16-cv-242, doc. no. 22-1) at
14.

defendant in question.  Coffey, 581 F.3d at 1245.  Accordingly, Busnel's purported inability to satisfy a judgment does not impact the court's determination as to whether he satisfies the significant defendant criteria.

Turning then to the actions at hand, the court measures the relief sought from Busnel against the relief sought from Saint-Gobain.  The proposed class seeking relief for damage to property values comprises current property owners.  Taking the plaintiffs' allegations as true, Busnel's four-year tenure at the Merrimack plant exposes him to potential liability to those who currently own damaged property.  As such, he qualifies as a defendant from whom significant relief is sought with respect to that action.  The proposed class seeking medical monitoring again poses a more difficult question.  Depending on how far back the class period extends -- and, as discussed supra, this remains an open question despite plaintiffs' general allusion to the limitations period -- there may exist a percentage of the plaintiff class not impacted by any action taken by Busnel, and who therefore could not seek to recover from him.

In sum, the court concludes Busnel constitutes a significant defendant with respect to the class seeking to recovery for property damage because Busnel's alleged actions impact the entirety of that class.  The open question as to the constitution of the class of plaintiffs seeking medical

25

monitoring precludes the plaintiffs from carrying their burden
of demonstrating the same.

### C.   Diversity jurisdiction

The defendants argue that, CAFA aside, diversity
jurisdiction exists because the plaintiffs improperly joined
Busnel.[30]  To draw such a conclusion, the court would have to
find that "there is no reasonable possibility that the state's
highest court would find that the complaint states a cause of
action upon which relief may be granted against" Busnel.
Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765
F.3d 103, 108 (1st Cir. 2014); see also Nordin v. PB&J Resorts,
LLC, 2016 DNH 193, 10 (concluding that defendants had not
carried the "heavy burden" of demonstrating improper joinder).

The court would be hard-pressed to come to such a
conclusion after determining, as it has supra Part II.B.3, that
the plaintiffs' allegations against Busnel render him a
significant defendant under the local-controversy exception --
even despite the court's reservations with respect to the

---

[30] See Objection (no. 16-cv-242, doc. no. 22-1) at 18-24.  The
defendants invoke the term "fraudulent joiner," which, as Judge
McAuliffe has explained, "is a term of art that applies to the
joinder of an in-state defendant against whom plaintiff simply
has no chance of success, whatever the plaintiff's motives."
Longden v. Philip Morris, Inc., 2003 DNH 140, 7 (internal
quotations omitted).  The term is interchangeable with "improper
joinder," which this court employs.

medical monitoring action.  The court need not conclusively decide this issue, however, having concluded that the local-controversy exception does not apply to these actions and, thus, that this court has jurisdiction over them under CAFA.

### III. <u>Consolidation</u>

Some months ago, the court notified the parties that these two actions may be consolidated pursuant to Federal Rule of Civil Procedure 42(a) and Local Rule 42.1.[31]  Defendants agree to consolidation[32]; plaintiffs do so for discovery purposes, but object to consolidation for class certification and trial.[33] Both cases arise out of the same allegedly-culpable activities of the same defendants affecting classes that, while not identical, admittedly overlap to some significant degree.  The plaintiffs have offered no argument as to why the cases could not proceed with the two classes as subclasses.  As such, the court consolidates these actions, though remains open to discussing bifurcating the cases for trial at the appropriate time.

---

[31] Potential Consolidation Order (no. 16-cv-242, doc. no. 11; civil no. 16-cv-243, doc. no. 12).

[32] Response to Obj. to Consolidation (no. 16-cv-242, doc. no. 31; civil no. 16-cv-243, doc. no. 32).

[33] Plaintiffs' Obj. to Consolidation (no. 16-cv-242, doc. no. 30; civil no. 16-cv-243, doc. no. 31).

## IV.  Conclusion

Because the plaintiffs have not carried their burden of demonstrating that these cases satisfy all of the requirements for the local-controversy exception to this court's jurisdiction under CAFA, the plaintiffs' motions to remand these actions to Hillsborough Superior Court[34] are DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  November 30, 2016

cc:  Kevin Scott Hannon, Esq.
     Paul M. DeCarolis, Esq.
     Bruce W. Felmly, Esq.
     Douglas E. Fleming, III, Esq.
     Mark Cheffo, Esq.
     Patrick Curran, Esq.
     Sheila L. Birnbaum, Esq.
     Nicholas F. Casolaro, Esq.

---

[34] Civil no. 16-cv-242, doc. no. 18; civil no. 16-cv-243, doc. no. 17.