## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| |
|---|
| KEVIN BROWN, individually and on behalf of all others similarly situated, *et al*., <br><br> *Plaintiffs*, <br><br> v. <br><br> SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION, *et al*., <br><br> *Defendants*. |

Civil Action No. 1:16-cv-00242-JL

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### [UNREDACTED VERSION FILED UNDER SEAL]

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

TABLE OF EXHIBITS ................................................................................................... viii

PRELIMINARY STATEMENT ........................................................................................ 1

BACKGROUND ............................................................................................................... 5

    A.    The Named Plaintiffs .......................................................................... 5

    B.    The Proposed Classes ......................................................................... 5

        1.    Class Definitions Based on Water Source ................................. 5

        2.    Class Definitions Based on Relief Requested ........................... 5

STANDARD FOR CLASS CERTIFICATION ................................................................. 7

ARGUMENT ..................................................................................................................... 8

I.     PLAINTIFFS FAIL THE RULE 23(A) REQUIREMENTS OF ADEQUACY AND TYPICALITY .......... 8

    A.    Classes With No Representatives Cannot Be Certified ........................................ 8

    B.    Conflicts Between Injured and Uninjured Members Preclude Certification .......... 9

II.    PLAINTIFFS FAIL THE RULE 23(A) REQUIREMENT OF COMMONALITY ............................... 13

    A.    No Class Can Be Certified Because Injury Is an Individualized Question........... 16

        1.    Injury Is Individualized for the Medical Monitoring Classes ................... 17

        2.    Injury Is Individualized for the Property Classes ..................................... 25

    B.    Liability Is an Individualized Question................................................................ 28

        1.    The Source of Property Exposure to PFOA Is Individualized.................. 29

        2.    The Source of Personal Exposure to PFOA Is Individualized.................. 31

        3.    Proof of State of Mind Is Individualized ................................................. 32

    C.    Damages Is an Individualized Question .............................................................. 33

        1.    The Need for Monitoring Is Individualized.............................................. 33

        2.    Diminution in Value Damages Are Individualized .................................. 36

III.   PLAINTIFFS FAIL RULE 23(B) STANDARDS FOR DAMAGES AND INJUNCTIVE CLASSES....... 36

    A.    Plaintiffs Cannot Meet Rule 23(b)(3) Requirements for a Damages Class .......... 36

    B.    Plaintiffs Cannot Meet Rule 23(b)(2) Requirements for an Injunctive Class....... 39

CONCLUSION.................................................................................................................. 40

# TABLE OF AUTHORITIES

**CASES**

*Allen v. Pa. Eng'g Corp.*,
  102 F.3d 194 (5th Cir. 1996) .......................................................................................23, 24

*Am. Honda Motor Co. v. Allen*,
  600 F.3d 813 (7th Cir. 2010) ...................................................................................................8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................................................... *passim*

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................................................................10

*In re Asacol Antitrust Litig.*,
  907 F.3d 42 (1st Cir. 2018) ....................................................................................... *passim*

*Ball v. Union Carbide Corp.*,
  385 F.3d 713 (6th Cir. 2004) ..................................................................................... *passim*

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) .........................................................................................2, 37, 40

*Barraza v. C.R. Bard Inc.*,
  322 F.R.D. 369 (D. Ariz. 2017) ...........................................................................................40

*Bates v. Tenco Services*,
  132 F.R.D. 160 (D. S.C. 1990) ............................................................................................14

*In re Baycol Prods. Liab. Litig.*,
  218 F.R.D. 197 (D. Minn. 2017) ..........................................................................................40

*Benefield v. Int'l Paper Co.*,
  270 F.R.D. 640 (M.D. Ala. 2010) ........................................................................................12

*In re Blood Reagents Antitrust Litig.*,
  783 F.3d 183 (3d Cir. 2015) ...................................................................................................8

*Boggs v. Divested Atomic Corp.*,
  141 F.R.D. 58 (D. Ohio 1991) ..............................................................................................14

*Boughton v. Cotter Corp.*,
  65 F.3d 823 (10th Cir. 1995) ..................................................................................... *passim*

*Bower v. Westinghouse Elec. Corp.*,
  522 S.E.2d 424 (W. Va. 1999) ..............................................................................................16

*Britt v. McKenney*,
    529 F.2d 44 (1st Cir. 1976) ..................................................................................9

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
    155 F.3d 331 (4th Cir. 1998) ...............................................................................20

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) .................................................................................13

*Castano v. Am. Tobacco Co.*,
    84 F.3d 736 (5th Cir. 1996) ...................................................................................4

*Clark v. Experian Info. Solutions, Inc.*,
    2001 WL 1946329 (D.S.C. 2001) ........................................................................11

*Clark v. State Farm Mut. Auto. Ins. Co.*,
    245 F.R.D. 478 (D. Colo. 2007), *aff'd*, 590 F.3d 1134 (10th Cir. 2009) ...............38

*Coleman v. Union Carbide Corp.*,
    2013 WL 5461855 (S.D. W. Va. 2013) ................................................................12

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ............................................................................................1, 36

*Cook v. Rockwell Int'l Corp.*,
    580 F. Supp. 2d 1071 (D. Colo. 2006) ...........................................................13, 14

*Cotramano v. United Techs. Corp.*,
    2018 WL 2047468 (S.D. Fla. 2018) .....................................................................36

*Crosby v. Soc. Sec. Admin. of U.S.*,
    796 F.2d 576 (1st Cir. 1986) ..................................................................................6

*Cruz v. Farquharson*,
    252 F.3d 530 (1st Cir. 2001) ..................................................................................9

*In re Dial Complete Mktg. & Sales Practices Litig.*,
    312 F.R.D. 36 (D.N.H. 2015) ...............................................................................34

*Donovan v. Philip Morris USA, Inc.*,
    2012 WL 957633 (D. Mass. 2012) .......................................................................14

*Ebert v. Gen. Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016) .............................................................................3, 37

*Evans v. Taco Bell Corp.*,
    2005 WL 2333841 (D.N.H. 2005) .........................................................................9

*Feinstein v. Firestone Tire & Rubber Co.*,
   535 F. Supp. 595 (S.D.N.Y. 1982) ...................................................................11

*Fisher v. Ciba Specialty Chemicals Corp.*,
   238 F.R.D. 273 (S.D. Ala. 2006) ...............................................................31, 36

*In re Fosamax Prods. Liab. Litig.*,
   248 F.R.D. 389 (S.D.N.Y. 2008) ..........................................................11, 21, 38

*Gates v. Rohm & Haas*,
   655 F.3d 255 (3d Cir. 2011)........................................................................ *passim*

*Gintis v. Bouchard Transp. Co.*,
   596 F.3d 64 (1st Cir. 2010)...........................................................................13

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................13

*Hermens v. Textiles Coated Inc.*,
   No. 216-2017-cv-524, slip. op. (N.H. Super. Ct. Mar. 16, 2018)...............16, 30, 37

*Kottaras v. Whole Foods Market, Inc.*,
   281 F.R.D. 16 (D.D.C. 2012)....................................................................23, 28

*Krueger v. Wyeth, Inc.*,
   2008 WL 481956 (S.D. Cal. 2008) ...............................................................11

*Lafferty v. Sherwin-Williams Co.*,
   2018 WL 3993448 (D.N.J. 2018) .................................................................29

*Lewallen v. Medtronic USA, Inc.*,
   2002 WL 31300899 (N.D. Cal. 2002) ...........................................................40

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).....................................................................................8

*Martin v. Shell Oil Co.*,
   198 F.R.D. 580 (D. Conn. 2000)...................................................................31

*Mays v. TVA*,
   274 F.R.D. 614 (E.D. Tenn. 2011)............................................................11, 12

*McQuilken v. A&R Dev. Corp.*,
   576 F. Supp. 1023 (E.D. Pa. 1983) ...............................................................14

*Mertens v. Abbott Laboratories*,
   99 F.R.D. 38 (D.N.H. 1983) .....................................................................32, 33

*Metro-N. Commuter R.R. Co. v. Buckley*,
   521 U.S. 424 (1997)..................................................................................38

*Miller v. Fuhu Inc.*,
   2015 WL 7776794 (C.D. Cal. 2015)................................................23, 36

*Modern Holdings*, *LLC v. Corning, Inc.*,
   2018 WL 1546355 (E.D. Ky. 2018) ..............................................7, 11

*Morris v. Davita Healthcare Partners, Inc.*,
   308 F.R.D. 360 (D. Colo. 2015) ..........................................................7

*In re MTBE Prods. Liab. Litig.*,
   209 F.R.D. 323 (S.D.N.Y. 2002) ..................................................11, 12

*In re Myford Touch Consumer Litig.*,
   2016 WL 6873453 (N.D. Cal. 2016) ................................................33

*Nafar v. Hollywood Tanning Sys., Inc.*,
   339 F. App'x 216 (3d Cir. 2009) ......................................................11

*In re New Motor Vehicles Canadian Exp. Antitrust Litig.*,
   522 F.3d 6 (1st Cir. 2008).......................................................... *passim*

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015)..............................................................8, 9

*O'Connor v. Boeing North Am., Inc.*,
   184 F.R.D. 311 (C.D. Cal. 1998) ......................................................14

*O'Neal v. Dep't of the Army*,
   852 F. Supp. 327 (M.D. Pa. 1994) ....................................................24

*Ohio Public Employees Retirement System v. Federal Home Loan Mortgage
   Corp.*,
   2018 WL 3861840 (N.D. Ohio 2018)..........................................23, 28

*Ouellette v. International Paper Co.*,
   86 F.R.D. 476 (D. Vt. 1980) ............................................................14

*Palsgraf v. Long Island R.R. Co.*,
   248 N.Y. 339 (1928)........................................................................33

*Parko v. Shell Oil Co.*,
   739 F.3d 1083 (7th Cir. 2014) ......................................3, 31, 37, 38, 39

*Perez v. Metabolife Int'l*,
   218 F.R.D. 262 (S.D. Fla. 2003)..............................................29, 34, 35

*In re Prempro*,
  230 F.R.D. 555 (E.D. Ark. 2005) ......................................................................................40

*In re Propulsid Prods. Liab. Litig.*,
  208 F.R.D. 133 (E.D. La. 2002) ......................................................................................40

*Randolph v. J.M. Smucker Co.*,
  303 F.R.D. 679 (S.D. Fla. 2014) ...............................................................................23, 28

*Reilly v. Gould, Inc.*,
  965 F. Supp. 588 (M.D. Pa. 1997) ..................................................................................10

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ......................................................................................40

*Rhodes v. E.I. du Pont de Nemours & Co.*,
  636 F.3d 88 (4th Cir. 2011) ............................................................................................24

*Rhodes v. E.I. DuPont de Nemours & Co.*,
  253 F.R.D. 365 (S.D. W. Va. 2008) ...............................................................3, 18, 23, 24

*Rink v. Cheminova, Inc.*,
  203 F.R.D. 648 (M.D. Fla. 2001), *appeal denied as moot*, 400 F.3d 1286 (11th
  Cir. 2005) ..........................................................................................................................4

*Rosales v. Unifund CCR Partners*,
  2008 WL 4976223 (N.D. Ill. 2008) ................................................................................33

*Rowe v. E.I. DuPont de Nemours & Co.*,
  2008 WL 5412912 (D.N.J. 2008) ............................................................................ *passim*

*Sher v. Raytheon Co.*,
  419 F. App'x 887 (11th Cir. 2011) ....................................................................................8

*Sosna v. Iowa*,
  419 U.S. 393 (1975) ...........................................................................................................8

*Sterling v. Velsicol Chem. Corp.*,
  855 F.2d 1188 (6th Cir. 1988) ........................................................................................13

*In re St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) ..........................................................................2, 34, 37, 40

*In re St. Jude Med., Inc.*,
  522 F.3d 836 (8th Cir. 2008) ..................................................................................2, 3, 37

*Sutera v. Perrier Grp. of Am. Inc.*,
  986 F. Supp. 655 (D. Mass. 1997) ..................................................................................24

*In re Teflon Prods. Liab. Litig.*,
   254 F.R.D. 354 (S.D. Iowa 2008) ........................................................................11

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999) ........................................................................11

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016) ............................................................................. *passim*

*Unger v. Amedisys Inc.*,
   401 F.3d 316 (5th Cir. 2005) ...............................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ................................................................................. *passim*

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ...............................................................................7

*Wehner v. Syntex Corp.*,
   117 F.R.D. 641 (N.D. Cal. 1987) ......................................................................14

*Weiner v. Snapple Beverage Corp.*,
   2010 WL 3119452 (S.D.N.Y. 2010) .............................................................23, 34

*Zehel-Miller v. AstraZeneca Pharms., LP*,
   223 F.R.D. 659 (M.D. Fla. 2004) ......................................................................40

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180, *amended*, 273 F.3d 1266 (9th Cir. 2001) .......................3, 37, 38, 40

**STATUTES AND RULES**

Rules Enabling Act, 28 U.S.C. § 2072 ...........................................................1, 11, 14, 17

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Fed. R. Evid. 702 ...............................................................................................8

**OTHER AUTHORITIES**

Restatement (Third) of Torts (2010) ............................................................................33

**TABLE OF EXHIBITS**

| Short Cite | Full Cite | Confidentiality | Location |
|---|---|---|---|
| 4/22/2019 *Sullivan* Tr. | Transcript of Hearing on Motion for Class Certification and Daubert Motions, Day 5, April 22, 2019, *Sullivan v. Saint-Gobain Performance Plastics Corp., et al.*, No. 5:16-cv-125 | None | Ex. 1 |
| ATSDR, PFAS | ATSDR Overview of Perfluoroalkyl and Polyfluoroalkyl Substances and Interim Guidance for Clinicians Responding to Patient Exposure Concerns Centers (May 7, 2018) | None | https://bit.ly/2NW8N8z |
| Bell (2017) | Bell, R. (Mar. 30, 2017).  Junk Science Versus the Scientific Method, Bloomberg BNA, 1, 4. | None | Ex. 2 |
| Bell (2016) | Bell, R. (2016).  The Scientific Method and the Valuation Process, 231 BNA Envt'l Due Diligence 2781, 2782. | None | Ex. 3 |
| Bartell Rpt. | Report of Scott M. Bartell, June 25, 2018 | None | Dkt. 122-5 |
| Bartell Tr. | Transcript of Deposition of Scott M. Bartell, June 24, 2019 | Complete | Ex. 4 |
| Bell Rpt. | Report of Randall Bell, June 25, 2018 | None | Dkt. 122-30 |
| Bell Tr. | Transcript of Deposition of Randall Bell, June 26, 2019 | Complete | Ex. 5 |
| Bell Tr. Ex. 6 | March 29, 2018 "Real Estate Services Proposal" | Complete | Ex. 6 |
| Bell Tr. Ex. 7 | June 5, 2019 "Real Estate Services Proposal" | Complete | Ex. 7 |

| Short Cite | Full Cite | Confidentiality | Location |
|---|---|---|---|
| Blundon Tr. | Transcript of Deposition of Christopher W. Blundon, May 2, 2019 | Complete | Ex. 8 |
| Blundon RFPs | Blundon Responses to Saint-Gobain's First Requests for Production, Appendix 12 | None | Ex. 9 |
| Chinkin Rpt. | Report of Lyle R. Chinkin, July 15, 2019 | Complete | Ex. 10 |
| Connor Rpt. | Report of John A. Connor, July 14, 2019 | Complete | Ex. 11 |
| EPA, PFAS | EPA, Basic Information on PFAS (Dec. 6, 2018) | None | https://bit.ly/2DovGvi |
| EPA, PFOA | EPA Drinking Water Health Advisory for PFOA | None | https://bit.ly/2PHCOsY |
| Exposure Factors Handbook | EPA, Exposure Factors Handbook (2011 Ed.) | None | https://bit.ly/30BJ8Dg |
| Grandjean Rpt. | Report of Philippe Grandjean, June 22, 2018 | None | Dkt. 122-4 |
| Grandjean Tr. | Transcript of Deposition of Phillipe Grandjean, July 8, 2019 | Complete | Ex. 12 |
| Guzelian Rpt. | Report of Philip S. Guzelian, July 12, 2019 | Complete | Ex. 13 |
| Holford Rpt. | Report of Theodore R. Holford, July 12, 2019 | Complete | Ex. 14 |
| K. Brown Tr. | Transcript of Deposition of Kevin W. Brown, April 29, 2019 | Complete | Ex. 15 |
| K. Peicker Tr. | Transcript of Deposition of Kimberly J. Peicker, May 24, 2019 | Complete | Ex. 16 |
| Mandel Rpt. | Report of Jeffrey H. Mandel, July 16, 2019 | Complete | Ex. 17 |

| Short Cite | Full Cite | Confidentiality | Location |
|---|---|---|---|
| Mobile Rpt. | Report of McDonald Morrissey Associates, LLC, July 12, 2019 | Complete | Ex. 18 |
| M. Peicker Tr. | Transcript of Deposition of Mark T. Peicker, May 20, 2019 | Complete | Ex. 19 |
| M. Peicker Tr. Ex. 57 | Blood Test Results | Complete | Ex. 20 |
| NHANES 4th Rpt. | NHANES, Fourth Report on Human Exposure to Environmental Chemicals, Updated Tables, Vol. 1 (Jan. 2019) | None | https://bit.ly/2kX5i2p |
| NHDES Consent Decree | NDES v. Saint-Gobain Consent Decree | None | https://bit.ly/2YL4uxy |
| NHDES PFAS Sampling Map | NHDES PFAS Sampling Map, 200 Bouchard St., Manchester, NH | None | Ex. 21 |
| NH News Release | State of New Hampshire Announces Historic Lawsuit, Actions to Protect Clean Drinking Water in New Hampshire (May 29, 2019) | None | https://bit.ly/2S8mr6X |
| Phillips Rpt. | Report of Trevor E. Phillips, July 11, 2019 | Complete | Ex. 22 |
| Sullivan Rpt. | Report of David A. Sullivan, June 22, 2018 | None | Dkt. 122 |
| Sullivan Rpt. Ref. 30 | List of Companies for Which No Further Investigation is Deemed Necessary by NHDES as Part of Southern NH PFOA in Drinking Water Investigation, January 27, 2017 | None | Ex. 23 |
| Sullivan Tr. | Transcript of Deposition of David A. Sullivan, June 20, 2019 | Complete | Ex. 24 |

| Short Cite | Full Cite | Confidentiality | Location |
|---|---|---|---|
| Sullivan Tr. Ex. 2 | Barr Preliminary Air, Soil, and Water Modeling Technical Memorandum:  Merrimack, New Hampshire, June 2017 | Complete | Ex. 25 |
| T. Brown Tr. | Transcript of Deposition of Teresa Brown, May 1, 2019 | Complete | Ex. 26 |
| T. Brown Tr. Ex. 14 | Letter dated 1/30/17 from NH DES to Participant with attachments | Complete | Ex. 27 |
| Vermont DOH Report | Vermont Dept. of Health, Exposure to Perfluorooctanoic Acid (PFOA) in Bennington and North Bennington, Vermont:  Results of Blood Testing and Exposure Assessment (Sept. 2017) | None | https://bit.ly/2OVYrAH |
| Vernon Rpt. | Report of James H. Vernon, June 26, 2018 | None | Dkt. 122-28 |
| Vernon Tr. | Transcript of Deposition of James H. Vernon, July 5, 2019 | Complete | Ex. 28 |
| Vernon Tr. Ex. 5 | May 29, 2018 Table of Tasks | Complete | Ex. 29 |

## PRELIMINARY STATEMENT

As "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,'" proposed class actions require "'rigorous analysis'" and are subject to strict procedural, statutory, and due process limits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 350-51 (2011) (citation omitted). Due process and the Rules Enabling Act do not permit class adjudication if it would "do away with the rights" that a party—whether a defendant or an absent class member—"would customarily have to raise plausible individual challenges" on the certified claims. *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51-52 (1st Cir. 2018). Rule 23 provides a variety of measures to ensure this standard is met. Under Rule 23(a), the claims must present common questions of law and fact, and the named plaintiffs must be adequate representatives of the class and possess claims typical of the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Then, Rule 23(b) sets out requirements for the valid types of class actions, each of which imposes protections for individualized claims and defenses. Thus, a damages class under Rule 23(b)(3) must show that there are common issues dispositive to the claims of the class that can be resolved "in one stroke" and that predominate over the individual issues. *Dukes*, 564 U.S. at 350. And a Rule 23(b)(2) injunctive class is permitted only if the entire class would be entitled to the same injunction. *Id.* at 360-61.

Plaintiffs cannot meet these standards. They seek to recover on behalf of several putative classes for harm allegedly caused by a ubiquitous chemical, PFOA, which for decades was widely used in many consumer and other products and by local New Hampshire industries. Despite the large number of property-level and personal sources of PFOA in the area, Plaintiffs train their focus singularly on Saint-Gobain Performance Plastics Corp., to whose Merrimack facility they attribute all their exposure. From Saint-Gobain, Plaintiffs seek class-wide recovery for medical monitoring, due to an alleged increased risk of future harm, and for property damage, due to a

purported diminution in value.  The testimony from Plaintiffs and their experts shows the elements of each of these theories are rife with individual issues that preclude certification.

Plaintiffs' motion for class certification is based on an outdated view of the law that the Supreme Court and other federal appellate courts have decisively rejected over the last 20 years. Plaintiffs fail even to cite the Supreme Court's landmark decision in *Dukes*, which heightened the analysis to establish commonality for certification, and superseded most of the cases on which Plaintiffs rely.  That standard does not recognize common questions, as Plaintiffs urge, based on a defendant's "single course of conduct," Mot. at 1, but only where core elements that will "drive the resolution" of the case can be proven—and "resolve[d]"—by common evidence.  *Dukes*, 564 U.S. at 350-51 (citation omitted).  Plaintiffs do not offer what Rule 23 commonality requires: evidence that "will suffice for ***each member*** to make a prima facie showing [or] the issue is susceptible to ***generalized, class-wide proof***."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (emphasis added, citation omitted).  Instead, they seek to skirt the individual issues in this case by proffering inchoate expert opinions that ruminate on the possibility of proofs that they have not yet attempted.  In addressing the class as a whole, they ignore both the "core principle that class actions are the aggregation of individual claims" and Saint-Gobain's right to make individual challenges.  *Asacol*, 907 F.3d at 56.  Their attempt to mask the individual differences that permeate those claims through average or homogeneous opinions does not withstand scrutiny.

A great weight of authority—absent from Plaintiffs' brief—stands against their request for certification.  Every federal appellate court to consider a proposed medical monitoring class has refused certification.  *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998); *Gates v. Rohm & Haas*, 655 F.3d 255, 265 (3d Cir. 2011); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (6th Cir. 2004); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005); *In re St. Jude Med.,*

*Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1196, *amended*, 273 F.3d 1266 (9th Cir. 2001); *Boughton v. Cotter Corp.*, 65 F.3d 823, 825-26 (10th Cir. 1995).  And no federal appellate decision post-*Dukes* has approved certification of a Rule 23(b)(3) property damage class action.  *See Gates*, 655 F.3d 255; *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014); *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016).  Most of all, the only two prior federal decisions that confronted putative PFOA medical monitoring class actions both rejected certification.  *Rowe v. E.I. DuPont de Nemours & Co.,* 2008 WL 5412912 (D.N.J. 2008); *Rhodes v. E.I. DuPont de Nemours & Co.,* 253 F.R.D. 365 (S.D. W. Va. 2008).  Of particular note, *Rowe* rejected class certification under circumstances nearly identical to this case. For the same reasons, Plaintiffs' claims cannot meet the "rigorous analysis" required by Rule 23.

*First*, Plaintiffs cannot meet Rule 23(a)'s adequacy and typicality prerequisites.  At the outset, certain of the proposed classes lack any representative and therefore cannot be certified. Moreover, the broad class definition creates an incurable conflict of interest between exposure-only class members and those with present physical injuries, which the Supreme Court has held requires denial of certification.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997).

*Second*, Plaintiffs cannot meet the Rule 23(a) requirement of common questions because the evidence for each of the three fundamental elements of their case is individualized:

➢ **Injury:**  Plaintiffs' theory of injury is individualized for the very same reasons articulated in *Rowe*.  For medical monitoring, Plaintiffs' "risk assessment" theory of injury is indistinguishable from the theory considered and rejected in *Rowe*, and their experts acknowledge that the same considerations that *Rowe* held precluded common proof of injury are also individualized here.  For example, a claim for medical monitoring depends upon many individual factors, as Plaintiffs' experts admit, including the amount of any each class member's exposure, increase in any risk, location of the residence, water consumption, health, and other factors.  And those experts also admit that the property classes may include individuals who, following individual inquiry, can be shown not to have experienced any diminution in value.

➢ **Liability:**  The issue of liability cannot be resolved without a series of individual determinations.  These include, for example, individual questions regarding the

source of PFOA in groundwater, the source of putative class members' personal exposure to PFOA, and also the defendant's state of mind.

➢ **Damages:** For medical monitoring, damages are represented by a "useful" medical monitoring program, which depends upon, among other things, each individual's medical circumstances. And property damages under a diminution-in-value construct are controlled by a host of unique characteristics that affect home values.

*Third*, these individual issues preclude certification of either a Rule 23(b)(3) damages class or a Rule 23(b)(2) injunctive class. Even if Plaintiffs could show some common question—and they cannot—they certainly cannot meet Rule 23(b)(3)'s much more demanding requirement of a predominance of common questions. Nor can they show that a class action is superior, especially because regulatory action and government suits "are other tools available" to address the issues raised by their claims. *Asacol*, 907 F.3d at 56. Indeed, Saint-Gobain has agreed to voluntary remediation with NHDES, and the State of New Hampshire has sued PFOA producers (but not Saint-Gobain). *See* NHDES Consent Decree; NH News Release.[1] Finally, Plaintiffs cannot avoid individual issues through an injunctive class under Rule 23(b)(2), which does not apply if each class member would have to seek "a different injunction." *Dukes*, 564 U.S. at 360-61.

It is with good reason that courts have historically disfavored class certification for mass tort actions. *See Amchem*, 521 U.S. at 625; *Castano v. Am. Tobacco Co.*, 84 F.3d 736, 746 (5th Cir. 1996). "A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." Fed. R. Civ. P. 23, Advisory Comm. Note, 1966 Amendment. Neither Rule 23 nor due process permits a certification that would deprive Saint-Gobain of its right to assert the individual challenges it has presented to each of Plaintiffs' claims. Certification should be denied.

---

[1] All record documents cited herein are referred to by their short citation as listed in the Table of Exhibits, which provides the full citation, location, and confidentiality status of each document.

## BACKGROUND

### A.  The Named Plaintiffs

Plaintiffs' Master Complaint identified seven adult putative class representatives:  Kevin and Teresa Brown, Mark and Kimberly Peicker, Christopher Blundon, Adam Dyer, and Bridget Heard.  Compl. ¶¶ 2-6.  Mr. Dyer was since dismissed without prejudice, and a similar motion as to Mrs. Heard is pending.  Dkt. 164; Dkt.177.  In addition, in resisting depositions of the Minor Plaintiffs, Plaintiffs stated they "do not intend to ask this court to appoint any minor plaintiff as a class representative for any putative class or subclass."  Dkt. 178 at 1.  Thus, the remaining proposed class representatives are Mr. and Mrs. Brown, Mr. and Mrs. Peicker, and Mr. Blundon.

### B.  The Proposed Classes

Plaintiffs' Complaint concerns a geographically defined Class Area covering parts of four New Hampshire towns:  Bedford, Litchfield, Merrimack, and Manchester.  Compl. ¶ 60.  Plaintiffs divide their proposed classes within that area along two primary lines:  one based on the source of water and the other based on the requested relief.  *Id.* ¶¶ 58, 61.

#### 1.   Class Definitions Based on Water Source

Plaintiffs propose classes both for residents with Private Wells in the Class Area and also for Municipal Water customers of Merrimack Village District Water Works ("MVDWW").  *Id.*  Plaintiff Bridget Heard is the only named Plaintiff who is a member of the Municipal Water Classes.  Should the Court grant her unopposed request to dismiss her claims without prejudice, none of the remaining Plaintiffs will be members of the Municipal Water Classes.  *See id.* ¶¶ 2-4.

#### 2.   Class Definitions Based on Relief Requested

Plaintiffs propose classes for Property Damage and for Medical Monitoring.  The Property Damage Classes are defined to include residential property owners that obtain water either from private wells within the Class Area or from MVDWW.  Compl. ¶¶ 59, 62.

The Medical Monitoring Classes, in contrast, are defined to include those who have lived in the Class Area who were exposed to household water above specified levels of PFOA for one year or more. Compl. ¶¶ 59, 62. Plaintiffs divide the Medical Monitoring Classes into three groups based on route of exposure and concentration of PFOA in the water—specifically, those who:

> [i] were born to mothers who consumed household water containing 20 parts per trillion ("ppt") or higher of the sum of PFOA and PFOS for a cumulative time period of one year or more before that person's birth [the "Prenatal Subclass"], or

> [ii] during the period from birth up to their 20th birthday for a cumulative time period of one year or more, consumed household water containing 20 ppt or higher of the sum of PFOA and PFOS and/or were breast fed by mothers who consumed household water containing 20 ppt or higher of the sum of PFOA and PFOS for a cumulative time period of one year or more before that person's birth [the "Minor Subclass"], or

> [iii] consumed household water containing 70 ppt or higher of the sum of PFOA and PFOS during the period from their 20th birthday and after for a cumulative time period of one year or more [the "Adult Subclass"].

Compl. ¶¶ 59, 62. None of the named Plaintiffs allege they are members of the Prenatal Subclasses and, as noted above, there are no purported representatives of the Minor Subclasses. In addition, discovery has shown that Plaintiff Christopher Blundon's water tested at 41 ppt, *see* Blundon RFPs, such that there is no evidence that he is in fact a member of the Medical Monitoring Classes.

The definition of the proposed Medical Monitoring Classes poses several problems. █████████████████████████████████████████████████████████ ████████████████ Moreover, because the definition is qualified based on prior residence in the area and ingestion of water above certain concentrations of PFOA, putative class members will be "impossible to identify prior to individualized fact-finding and litigation," as the discovery of Mr. Blundon's non-membership illustrates. *Crosby v. Soc. Sec. Admin. of U.S.*, 796 F.2d 576, 580 (1st Cir. 1986). And even apart from identification of class members, there is "significant concern for how adequate Rule 23(c)(2)(B) notice could be provided to each and every one of the individuals

who … resided within the Affected Area." *Modern Holdings*, *LLC v. Corning, Inc.*, 2018 WL 1546355, at *16 (E.D. Ky. 2018).  The proposed Medical Monitoring Classes contain "an uncertain number of persons, many of whom may be impossible to track." *Id.*  "[I]f a court must undertake extensive individualized inquiries" to determine class membership, "certification is not appropriate." *Morris v. Davita Healthcare Partners, Inc.*, 308 F.R.D. 360, 370 (D. Colo. 2015).

## STANDARD FOR CLASS CERTIFICATION

Plaintiffs bear the burden of "affirmatively demonstrat[ing] ... compliance with Rule 23." *Asacol*, 907 F.3d at 55 (internal citation and quotation marks omitted).  In assessing whether Plaintiffs have met their burden, the Court must conduct a "rigorous analysis" to ensure that Rule 23's requirements "have been satisfied." *Dukes*, 564 U.S. at 350-51 (citations omitted).  Though class certification is not an inquiry into the merits, "a district court must formulate some prediction as to how specific issues will play out" in evaluating whether Rule 23's requirements are met. *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  In particular, where a case involves a "novel theory of legally cognizable injury"—as this Court has noted of Plaintiffs' medical monitoring claims—district courts must conduct "***a more searching inquiry*** into whether plaintiffs will be able to prove the pivotal elements of their theory at trial." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.,* 522 F.3d 6, 25-26 (1st Cir. 2008) (emphasis added).

Rule 23 sets forth a framework of requirements for class certification.  Plaintiffs must first establish the four prerequisites of Rule 23(a)—(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *See Amchem*, 521 U.S. at 613.  Then, if those are met, they must "show that the action is maintainable" under Rule 23(b), whether as a damages action, Fed. R. Civ. P. 23(b)(3), or as an injunctive action.  *Id.* 23(b)(2).  For a damages class under Rule 23(b)(3), Plaintiffs must show that "questions of law or fact common to the class members predominate over any questions affecting on individual members" and that the class is "superior" to other methods

of addressing the claims. *Id.* 23(b)(3). And for an injunctive class under Rule 23(b)(2), Plaintiffs must show "final injunctive relief … is appropriate respecting the class as a whole." *Id.* 23(b)(2).

The Supreme Court in *Dukes* expressed "doubt" that expert testimony could be admitted for class certification without satisfying *Daubert*. 564 U.S. at 354. A majority of the courts of appeals that have addressed the question hold that *Daubert* and Rule 702 apply to class certification expert testimony. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015); *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 2011); *Unger v. Amedisys Inc.*, 401 F.3d 316, 323 n.6 (5th Cir. 2005). Saint-Gobain intends to move to exclude Plaintiffs' class certification expert testimony by the September 6, 2019 deadline. Nevertheless, the Court need not decide those challenges to deny class certification, which is improper even if Plaintiffs' expert testimony is accepted.

## ARGUMENT

### I.    PLAINTIFFS FAIL THE RULE 23(A) REQUIREMENTS OF ADEQUACY AND TYPICALITY

#### A.  Classes With No Representatives Cannot Be Certified

The Court should strike the proposed Municipal Water Classes and the Prenatal and Minor Subclasses of the Medical Monitoring Classes because they lack class representatives and therefore lack standing. "Article III standing is an 'indispensable part' of any case that must be present at every stage of the case." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 31 (1st Cir. 2015); *accord Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Thus, "[a]t least one *named* plaintiff must satisfy the actual injury component of standing in order to seek relief on behalf of himself or the class." *Nexium*, 777 F.3d at 31 (citation omitted). "A litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Accordingly, a class cannot be certified without a named representative.

Here, however, only one Plaintiff, Bridget Heard, is a member of the Municipal Water Classes, *see* Compl. ¶ 6, and she has now moved to dismiss her claims without prejudice and to withdraw as a class representative.   Dkt. 177.   The same is true of the Prenatal and Minor Subclasses.   None of the named Plaintiffs have identified themselves as members of the Prenatal Subclasses, and Plaintiffs have represented that they "do not intend to ask this court to appoint any minor plaintiff as a class representative for any putative class or subclass."   *See* Dkt. 178 at 1.[2]

Unidentified absent class members cannot save standing for these classes.   "Only when a class is certified does the class acquire a legal status independent of the interest asserted by the named plaintiffs."   *Cruz v. Farquharson*, 252 F.3d 530, 534 (1st Cir. 2001).   "[U]nless and until the court certifies such a class," those absent class members "are simply not before the court." *Evans v. Taco Bell Corp.*, 2005 WL 2333841, at \*4 (D.N.H. 2005).   Since "none of the named plaintiffs may maintain this action on their own behalf, they may not seek such relief on behalf of a class."   *Britt v. McKenney*, 529 F.2d 44, 45 (1st Cir. 1976).   Thus, the absence of any representatives for the Municipal Water Classes and the Prenatal and Minor Subclasses precludes their certification.   *See Nexium*, 777 F.3d at 31-32.

### B.  Conflicts Between Injured and Uninjured Members Preclude Certification

The presence of uninjured class members prevents satisfaction of the Rule 23(a)'s adequacy requirement, which "serves to uncover conflicts of interest between named parties and the class they seek to represent."   *Amchem*, 521 U.S. at 625.   The Supreme Court has held that an incurable conflict exists in a class that contains both "exposure-only plaintiffs" and those who may

---

[2] Whether denominated as groups or as subclasses, the unique interests of those exposed as minors or in utero cannot be represented in this action by those who do not "possess the same interest and suffer the same injury."   *Dukes*, 564 U.S. at 348-49 (citation omitted).   This is especially so in light of Plaintiffs' experts' testimony that "developmental exposure to PFOA induces effects that are not necessarily seen in response to exposures during adulthood."   Grandjean Rpt. at 14; *id.* at 58.

be "currently injured" because their interests are not aligned.  *Id.* at 626; *see also In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996).  This conflict plays out here on two levels.[3]

First, as in *Amchem*, there is a conflict between proposed class representatives who allege only exposure to water with PFOA and absent class members who may have present physical injuries they attribute to PFOA.  521 U.S. at 626.  The putative class contains both types of members.  Indeed, others actions allege personal injuries attributed to PFOA from Saint-Gobain. *See, e.g.*, Complaint, *Dowling v. Saint-Gobain Performance Plastics Corp.*, 1:18-cv-00180, Dkt. 1-1 ¶ 22 (D.N.H.) (alleging that "Plaintiff Amy Mendez has been exposed to high levels of PFOA [and] has been diagnosed with High Blood Pressure and Cholesterol.").  This poses a conflict between "the currently injured," whose "goal is generous immediate payments," and "exposure-only plaintiffs," who would seek "an ample, inflation-protected fund for the future."  *Amchem*, 521 at 626.  As a result, there can be "no structural assurance of fair and adequate representation for the diverse groups and individuals affected," and certification is barred.  *Id.* at 627.

Second, there is a conflict between proposed class representatives who are not candidates for monitoring and the absent class members who are.  "A named plaintiff's claim may be adversely affected by facts which may prove to be helpful to another," which "is especially true for the medical monitoring class."  *Reilly v. Gould, Inc.*, 965 F. Supp. 588, 600 (M.D. Pa. 1997).

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████; *see also Ball*, 385 F.3d at 728.  Yet the proposed

[3] Plaintiffs' experts largely ignore the proposed representatives.  ███████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████

class includes individuals with no alleged physical manifestations of PFOA exposure. As a result, there is a conflict of interest between the "named plaintiffs who ***already*** have" certain of the conditions proposed to be monitored, and the "unnamed plaintiffs who do not," from whom they "have fundamentally different interests." *Ball*, 385 F.3d at 728 (citation omitted).

Among other things, these conflicts lead to problems of claim-splitting. Absent class members with present alleged injuries may later file suit—whether for personal injury or property damage—only to learn they had impermissibly split a single cause of action. *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 338 (S.D.N.Y. 2002). Conversely, "[e]ach of the potential 'exposure-only' class members presents a conflict of interest against the interest of named plaintiffs who are currently injured." *Modern Holdings v. Corning*, 2018 WL 1546355, at *16 (E.D. Ky. 2018) (citing *Amchem*, 521 U.S. at 626). Thus, Plaintiffs' "efforts to reserve personal injury and damage claims" for future litigation "may, in fact, jeopardize the class members' rights to bring such claims in a subsequent case," *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550 (D. Minn. 1999), or may render Saint-Gobain subject to a second suit on claims it reasonably believed it already litigated. This is a "possible prejudice … too great" to permit certification. *Id.* at 551.[4]

This claim-splitting problem is incurable. No pronouncement by the Court can modify substantive claim-splitting law, *see* 28 U.S.C. § 2072(b), or guarantee that a later court will not find that class member's personal injury claims barred. *See MTBE*, 209 F.R.D. at 340; *Mays v. TVA*, 274 F.R.D. 614, 623-24 (E.D. Tenn. 2011). Opt-out opportunities, available only to Rule 23(b)(3) class members, are no substitute for complying with Rule 23's adequacy and superiority

---

[4] *See also, e.g.*, *In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 401 (S.D.N.Y. 2008); *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 368 (S.D. Iowa 2008); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606-07 (S.D.N.Y. 1982); *Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *3 (S.D. Cal. 2008); *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224-25 (3d Cir. 2009); *Clark v. Experian Info. Solutions, Inc.*, 2001 WL 1946329, at *3-4 (D.S.C. 2001).

11

requirements.  *MTBE*, 209 F.R.D. at 338 & n.23; *Mays*, 274 F.R.D. at 623.  Nor can the Court

simply exclude persons with current physical injuries, since determining who those individuals are

would require detailed individual inquiry into each potential class member's health.  *See Benefield*

*v. Int'l Paper Co.*, 270 F.R.D. 640, 645 (M.D. Ala. 2010); *Coleman v. Union Carbide Corp.*, 2013

WL 5461855, at *40 (S.D. W. Va. 2013).  Classes so riven with conflicts cannot be certified.

In addition, the diverse nature of the named Plaintiffs' alleged injuries precludes a finding

that they are either typical or adequate representatives of the class.  Fed. R. Civ. P. 23(a)(3)-(4).

Here, the remaining named Plaintiffs vary widely on matters relevant to their claims, including:



- ➢ PFOA levels in their blood,

- ➢ Pre-existing medical conditions relevant to proposed monitoring,

- ➢ The medical care that they already receive,

- ➢ PFOA levels in the water at their homes,

- ➢ Sources of drinking water,

- ➢ Methods of remediation,

In light of these differences, it is impossible to say that the class representatives are

typical—that they "'possess the same interest and suffer the same injury' as the class members."

*Dukes*, 564 U.S. at 348-49 (citation omitted).[5]   These and other factors unique to the named

---

[5] Contrary to Plaintiffs' claim, typicality is not met simply by a showing that "the named plaintiff's claim and the class claim are interrelated."  Mot. at 13 (citation omitted).

Plaintiffs give rise to unique defenses applicable to the named Plaintiffs only, which makes them unsuitable as class representatives. *Brown v. Kelly*, 609 F.3d 467, 481 (2d Cir. 2010); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).



These individual injuries and circumstances raise individualized defenses that preclude a finding of typicality.

## II.   PLAINTIFFS FAIL THE RULE 23(A) REQUIREMENT OF COMMONALITY

Commonality is the fulcrum on which certification turns. Because class actions are the "aggregation of individual claims, and do not create a class entity or re-apportion substantive claims," *Asacol* 907 F.3d at 56, commonality among those claims is critical to class certification. *See Dukes*, 564 U.S. at 348-49. "Commonality" is woven into several metrics of Rule 23, including the requirements of "common questions" of law or fact, Fed. R. Civ. P. 23(a)(2), that representatives have claims "typical" of the class, *id.* 23(a)(3), that common questions predominate over individual questions in a damages class action, *id.* 23(b)(3), and that relief for an injunctive class be appropriate for "the class as a whole." *Id.* 23(b)(2).

Notably, Plaintiffs' motion makes no mention of the controlling standard for showing commonality under Rule 23(a)(2), which is supplied by the Supreme Court's landmark decision in *Dukes*. Plaintiffs are misguided in their belief that "the test for commonality is not demanding," for *Dukes* dispels any notion that "this standard is easily met." Mot. at 13.[6] As *Dukes* explains,

---

[6] Notably, the majority of the environmental tort class certification decisions that Plaintiffs cite are state-court decisions, and the federal decisions they cite in such cases all came before *Dukes* (and many even before *Amchem*). *See Gintis v. Bouchard Transp. Co.*, 596 F.3d 64 (1st Cir. 2010); *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988); *Cook v. Rockwell Int'l Corp.*, 580

commonality requires Plaintiffs to demonstrate that their claims "depend upon a common contention" subject to "class-wide resolution"—that is, that "determination of its truth or falsity will ***resolve*** an issue that is ***central to the validity*** of ***each one of the claims in one stroke***." *Dukes*, 564 U.S. at 350 (emphasis added). This standard includes three distinct elements.

First, commonality requires not just common proof, but also common defenses. At a minimum, commonality requires Plaintiffs to show they have common proof of some element— that is, that "the plaintiffs' presentation of their case will be through means amenable to the class action mechanism. *New Motor Vehicles*, 522 F.3d at 29. But common ***proof*** alone is insufficient unless there are also common ***defenses***, which is why *Dukes* requires the question be "resolved" by common evidence. *See* 564 U.S. at 350. This is so because the Rules Enabling Act prohibits any certification that would "do away with the rights" that a defendant "would customarily have to raise plausible individual challenges" on the questions at issue. *Asacol*, 907 F.3d at 51-52; *accord Dukes*, 564 U.S. at 367. Thus, a question is common only if the "defense is [also] common to the claims made by all class members." *Tyson Foods*, 136 S. Ct. at 1047. Conversely, where the defendant has proffered "defenses to individual claims" on a given point—as Saint-Gobain has for each element of Plaintiffs' claims—there is no common question. *See Dukes*, 564 U.S. at 367.

---

F. Supp. 2d 1071 (D. Colo. 2006); *O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311 (C.D. Cal. 1998); *Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58 (D. Ohio 1991); *Wehner v. Syntex Corp.*, 117 F.R.D. 641 (N.D. Cal. 1987); *McQuilken v. A&R Dev. Corp.*, 576 F. Supp. 1023 (E.D. Pa. 1983); *Bates v. Tenco Services,* 132 F.R.D. 160 (D. S.C. 1990); *Ouellette v. International Paper Co.*, 86 F.R.D. 476 (D. Vt. 1980). Plaintiffs cite one post-*Dukes* district court decision, *Donovan v. Philip Morris USA, Inc.*, 2012 WL 957633 (D. Mass. 2012), that denied a motion to decertify a medical monitoring class in tobacco litigation. Although Saint-Gobain submits that the *Donovan* certification was erroneous, it notes that the case ended in a defense judgment, No. 06-12234, Dkt. 742 (D. Mass. Sept. 22, 2016), and was not subject to appellate review.

Second, commonality must address core issues in the case. *Dukes* rejects the notion, advanced by the outdated cases cited by Plaintiffs, that commonality can be met by stating questions at a high level of generality, as "[a]ny competently crafted class complaint" could do. 564 U.S. at 349 (internal citation and quotation marks omitted). Rather, the "common answers" with which the class action device is concerned must be "apt to drive the resolution of the litigation." *Id.* at 350 (citation omitted, emphasis added). Without more, "same conduct" and "same source" do not resolve an element "central to the validity" of the claims or defenses here. *Id.* Thus, even if Plaintiffs could prove by common evidence their allegations of a "common source" of PFOA, or harm from the "same conduct" by Saint-Gobain (and they cannot), *see* Mot. at 21, it would not be a common question.

Third, commonality must reach the claim of each individual member of the class. Evidence that proves an element as to many, or even most, class members does not make it a common question—it must resolve the element as to *all*. *See id.* As the Supreme Court has explained following *Dukes*, "a common question is one where the **same evidence** will suffice for **each member** to make a prima facie showing [or] the issue is susceptible to **generalized, class-wide proof**." *Tyson Foods*, 136 S.Ct. at 1045 (emphasis added, citation omitted). In contrast, if "members of a proposed class will need to present evidence that varies from member to member," then the issue is individualized. *See id.* Thus, evidence constitutes common proof only if it would be "'admissible and sufficient'" to support a showing on a given element "'in **any individual class member's** individual trial.'" *Asacol*, 907 F.3d at 54 (emphasis added) (citing *Tyson Foods*, 136 S. Ct. at 1047).

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████  Vernon Rpt. at 4; ████████████████████████

Bell Rpt. at 11-12; ██████████████████████

Applying these standards here shows that Plaintiffs have not met the Rule 23(a)(2) standard of commonality.  Both Plaintiffs' medical monitoring claims and their property claims require proof of three essential elements:   injury, liability, and damages.   For a theory of medical monitoring without physical injury (which Saint-Gobain denies is recognized in New Hampshire), the purported "injury" is significant exposure that causes increased risk of disease, the "liability" is a tort theory of causation coupled with a culpable state of mind, and the "damages" are the existence of a monitoring regimen useful for the advance detection and treatment of disease.   *See Sullivan v. Saint-Gobain Performance Plastics Corp.*, No. 16-cv-00125, Dkt. 105 at 6 (D. Vt. Sept. 13, 2017); *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 430 (W. Va. 1999) (cited in *Hermens v. Textiles Coated Inc.*, No. 216-2017-cv-524, slip. op. at 12 (N.H. Super. Ct. Mar. 16, 2018)).   Likewise, Plaintiffs' property claims purport to show "injury" via presence of PFOA with alleged detrimental effect on value, "liability" under a tort theory, and "damages" through diminished property value.   *See* Dkt. 100 at 8-16.   Each element is inherently individualized.

### A.  No Class Can Be Certified Because Injury Is an Individualized Question

The proposed classes cannot be certified because there are individual questions as to the fundamental and essential element of injury.   In *Asacol*, a pharmaceutical antitrust decision, the First Circuit confronted the question of whether "a class be certified in this case even though injury-in-fact will be an individual issue, the resolution of which will vary among class members." 907 F.3d at 51.   The First Circuit answered that, in "a case in which any class member may be uninjured, …. *[t]he need to identify those individuals will predominate*" over common questions and will thus preclude certification.   *Id.* at 53-54 (emphasis added); *accord New Motor Vehicles*, 522 F.3d at 28.   To certify a class in such circumstances would require "jettisoning the rules of

evidence and procedure, the Seventh Amendment, [and] the Rules Enabling Act." *Asacol*, 907 F.3d at 53. Because a "'class cannot be certified on the premise that [the defendant] will not be entitled'" to bring individual affirmative defenses or challenges to the elements, individual issues with respect to injury-in-fact preclude class certification. *See id.* at 53 (quoting *Dukes*, 564 U.S. at 367). Here, as in *Asacol*, "whether any given individual was injured (and therefore has a claim) turns on an assessment of the individual facts concerning that person," *id.* at 55, which are "genuinely challenged" by Saint-Gobain on an individual basis. *Id.* at 53.

## 1. Injury Is Individualized for the Medical Monitoring Classes

This Court previously denied Saint-Gobain's motion to dismiss Plaintiffs' medical monitoring claims without prejudice pending a potential certification to the New Hampshire Supreme Court. Dkt. 100 at 21. As this Court noted in its Order, Plaintiffs have "effectively conceded that they do not, at present *have* an injury," but nevertheless seek medical monitoring damages for anticipated future harm. *Id.* at 20. For the reasons stated in its motion to dismiss, Saint-Gobain maintains that New Hampshire does not and should not recognize a claim for future harm in the absence of present injury. Dkt. 52-1 at 20-22. In any event, because "[n]either New Hampshire's legislature nor its Supreme Court has spoken on the question," Dkt. 100 at 20, Plaintiffs' theory of injury is decidedly novel. As such, it is subject to "***a more searching inquiry*** into whether plaintiffs will be able to prove the pivotal elements of their theory at trial." *New Motor Vehicles*, 522 F.3d at 25-26 (emphasis added). Even under a medical monitoring theory of purported injury as "significant exposure" and "increased risk," determining whether putative class members are "injured" presents individual questions that necessarily preclude certification.

Notably, the district court in *Rowe* considered and rejected a nearly identical attempt to prove class-wide injury based on the same parameters here. Here, Plaintiffs define the Medical Monitoring Classes with reference to individuals who lived in certain areas and consumed water

17

above certain PFOA concentrations for a year or more:  generally, 20 ppt for minors exposed via water or breast-feeding, and 70 ppt for adults.  *See* Compl. ¶¶ 59, 62.  Likewise, in *Rowe*, the plaintiffs advanced a theory of common injury based on "consumption of drinking water with a PFOA level higher than .02 ppb"—*i.e.*, 20 ppt—"for at least 1 year."  2008 WL 5412912, at *19.

The *Rowe* court identified numerous problems with this approach.  Fundamentally, a "risk assessment" threshold of drinking 20 ppt water for one year could not describe injury for the whole class due to "many individualized issues" that destroyed "the cohesiveness of the … class," including the "personal health characteristics" of its members.  *Id.* at *12.  This was so because, as here, "each class member's risk of disease will differ depending on his/her background risk of disease and susceptibility to PFOA," which "depend[s] largely on individual circumstances, such as gender, age, drug/alcohol use, nutrition, body mass index, physiology, behavior, medical history … and general state of health."  *Id.* at *17.  As a result, a risk assessment threshold could not prove injury.  *See id.*  Rather, "each class member would … have to demonstrate his/her specific exposure, how that exposure has increased his/her risk of disease, and his/her corresponding need for medical monitoring, all of which would require medical expert testimony ***specific to each individual***."  *Id.* at *21 (emphasis added); *accord Rhodes*, 253 F.R.D. at 376.

The very same problems are present here.  Notably, Plaintiffs' experts here agree as to the existence of the same considerable individual differences identified by the *Rowe* court and more.  Their expert Dr. Grandjean acknowledges that these and many other factors vary throughout the populations proposed for monitoring:

> Q.  You would agree that every individual has his or her own ***background risk of developing the diseases*** in question, true?
> A.  Yeah, ***sure***.
> Q.  And, among the individuals residing within the areas at issue in this matter, you would expect there to be ***considerable individual differences*** as to their ***amount and length of exposures to PFOA***, correct?

A. *Sure*.

Q. And you would expect there to be ***considerable individual differences*** as to what their ***PFOA blood serum levels*** would be, correct?

A. *Sure*.

Q. You would expect there to be ***considerable individual differences*** as to what their ***susceptibilities, if any, to PFOA*** might be, true?

A. ***Right***.  I mean, women don't get prostate cancer, so, I mean, it's obvious.

Q. Okay. And, as to those ***individual differences*** in exposure and blood levels and susceptibilities, if any, that would be a function of a ***number of different variables***, correct?

A. *Sure*.

Q. And those individual differences would be a function of, among other things, ***their ages***, correct?

A. ***Sure***, of course.

Q. And the individual differences would be a function of, among other things, ***their gender***, true?

A. Gender, ***yeah, okay***.

Q. The individual differences would be a function of, among other things, ***how long they lived in the area***, true?

A. ***Of course***.

Q. The individual differences would be a function of, among other things, their ***rates of daily water consumption***, correct?

A. ***Right***.

Q. And the individual differences would be a function of, among other things, the ***concentration of PFOA in the water they drank***, correct?

A. ***Obviously***.

Q. And the individual differences would be a function of, among other things, their ***sources of water***, correct?

A. The sources, but haven't we been over this, I mean, bottled water or non-bottled water?

Q. Those would be part of the individual differences, correct?

A. ***Sure, yes***.

Q. And the individual differences would be a function of, among other things, their ***general state of health as well as other medical conditions***, correct?

A. To some degree at least, ***yes***.

Q. The individual differences would be a function of, among other things, their ***occupational histories***, correct?

A. ***Right***.  It follows from the previous one.

...

Q. Okay. ***Hereditary factors*** can also contribute to an individual's background risk, correct?  …

A. ***Absolutely***.

Q. And an individual's ***level of physical activity*** can affect their background risk for certain endpoints, correct?

A. ***Of course***.

Q. And ***eating habits*** affect an individual's background risk as well, true?

…

A. ***Eating, yeah, fine***.

4/22/19 *Sullivan* Tr. at 104:22-106:22, 107:17-108:2 (emphasis added).[7]  Likewise, Plaintiffs'

expert Dr. Bartell recognizes that "individuals may vary in innate susceptibility, pre-existing health

conditions, and other exposures that may increase the individual likelihood of disease due to PFAS

exposures."  Bartell Rpt. at 20; ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████  But in fact, the values

within that purported average vary widely—in fact, there may be a ten to twenty-fold difference

between the 10th percentile for water consumption and the 95th percentile.  *See* Exposure Factors

Handbook 3-10, tbl. 3-19, 3-38, 3-59 (2011); ██████████████  Such variation is precisely why

courts have held that the "shortcut" of using purported "average" values instead of "individual

damages" shows "that class-wide proof of damages [i]s impermissible."  *Broussard v. Meineke*

*Discount Muffler Shops, Inc.*, 155 F.3d 331, 343 (4th Cir. 1998); *Asacol*, 907 F.3d at 54; *Gates*,

655 F.3d at 266. ██████████████████████████████

This method too was raised and rejected in *Rowe*.  The expert offered a "risk assessment"

theory of injury due to consuming water with PFOA levels above 20 ppt "for at least 1 year" "based

---

[7] ██████████████████████████████████████████████████

on the reported averages of these characteristics within the general population." 2008 WL 5412912, at *13, 19. But "the problem is that the underlying assumptions are not necessarily true for all class members—indeed, they are undoubtedly false, as the class contains thousands of individuals who are different sizes and have different water consumption habits." *Id.* at *13. Because "an individual's exposure does in fact change" in relation to these variables, relying on a PFOA level in water to define class membership "attempts to characterize exposure as common by glossing over the many individualized issues underlying this element." *Id.* at *14-15. █

████████████████████████████████████████████████████████████████████

██████████████████████, "[a] court could not decide whether any class member's [exposure] caused him or her to suffer a significant increase in the risk ... without considering these individual factors." *In re Fosamax Prod. Liab. Litig*, 248 F.R.D. 389, 400 (S.D.N.Y. 2008); *Ball*, 385 F.3d at 727-28. Plaintiffs "cannot substitute evidence of exposure of actual class members with evidence of hypothetical, composite persons in order to gain class certification," which "would not be probative of any ***individual's*** claim." *Gates*, 655 F.3d at 266 (emphasis added).

Here, too, the record shows a great deal of individual differences with regard to exposure. The class definitions offered by Plaintiffs, like the "risk assessment" thresholds in *Rowe*, determine class membership based on consumption of household water above certain thresholds for one year or more. Compl. ¶¶ 59, 62. ████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████ It will vary if they drank more water at work than at home. It will vary if they already used an in-home filtration

system, such as a Brita activated-carbon filter.  ████████████████████; 4/22/19 *Sullivan* Tr. at 103:19-104:1 (Grandjean).  It will vary if they drank primarily bottled water, with an occasional glass of tap water.  ████████████████████; 4/22/19 *Sullivan* Tr. at 103:19-104:21 (Grandjean).  ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Moreover, the concentrations of PFOA in drinking water are also individualized.  Plaintiffs have proffered no data or expert opinion regarding concentrations in class members' drinking water before PFAS sampling began in 2016.  ████████████████████  However, sampling since 2016 shows that PFOA concentrations in drinking water wells vary by time and location among members of the proposed Private Well and Municipal Water Classes.  ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

Dr. Vernon, a hydrogeologist Plaintiffs retained to opine on PFOA in the municipal water system, admits he can provide only a "qualitative assessment" and "on a system-wide basis."  Vernon Rpt. at 3.  Dr. Vernon's proposed calculations—which he has not yet performed—would "only yield[] a system-wide average," *id.* at 4, and ████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



. Initially, an expert's opinion that he can "provide a method for calculating damages on a classwide basis" is insufficient where the expert offers "few concrete details ... regarding how he will conduct his hypothetical analysis" as "'applied to the facts in issue.'" *Miller v. Fuhu Inc.*, 2015 WL 7776794, at *22 (C.D. Cal. 2015) (citation omitted).[8] and is a "demonstrably wrong" method for determining claims of individual class members. *Asacol*, 907 F.3d at 54.

In turn, these individual differences within the putative class with regard to significant exposure also preclude common resolution of the issue of increased risk. That an individual consumed water that exceeds protective "risk assessment" standards for PFOA—such as the 20 ppt and 70 ppt thresholds used by Plaintiffs here—does not itself show an "increased risk" of health effects, much less injury. As the *Rhodes* court explained in denying certification of a similar PFOA class, the "distinct purpose" of such risk assessments makes them "of limited utility in a toxic tort case." *Rhodes*, 253 F.R.D. at 377. That is, they provide "a level below which there is no appreciable risk to the general population," but they do not show "that any extra level above the 'safe' level [is] significantly harmful." *Id.*; *accord Allen v. Pa. Eng'g Corp.*, 102 F.3d 194, 198

---

[8] *See also, e.g.*, *Weiner v. Snapple Beverage Corp.*, 2010 WL 3119452, at *8 (S.D.N.Y. 2010); *Kottaras v. Whole Foods Market, Inc.*, 281 F.R.D. 16, 25-26 (D.D.C. 2012); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 696 (S.D. Fla. 2014); *Ohio Public Employees Retirement System v. Federal Home Loan Mortgage Corp.*, 2018 WL 3861840, at *19 (N.D. Ohio 2018).

(5th Cir. 1996); *Sutera v. Perrier Grp. of Am. Inc*., 986 F. Supp. 655, 664-65 (D. Mass. 1997);
*O'Neal v. Dep't of the Army*, 852 F. Supp. 327, 333 (M.D. Pa. 1994).

The *Rowe* court likewise concluded that risk assessments are not a proxy for injury. Risk
assessment standards set "a level that will protect the most sensitive members of the population,"
based on "a number of protective, often 'worst case' assumptions," and thus "generally
overestimate potential toxicity levels for nearly all individuals." *Rowe,* 2008 WL 5412912, at *16
(quotation omitted). But "[w]hile the public health sector may rely on assumptions, our tort
litigation system does not operate in the same way." *Id.* at *14. Because these risk assessment
thresholds do not "identify the 'danger' point above which individuals are at a distinctive increased
risk," they cannot serve as a benchmark for harm. *Id.* at *18; *accord Rhodes*, 253 F.R.D. at 378.[9]

In the end, then, a risk assessment cannot provide common proof of increased risk because
"[t]he risk assessment method requires the Court to assume" identical physical characteristics and
water use criteria for the entire putative class that are known to be false. *Rowe*, 2008 WL 5412912,
at *13. "[T]hat it would take significant investigative efforts to obtain information specific to each
individual in the proposed class … does not excuse Plaintiffs from doing it." *Id.* at *14. "A class
action is not intended to be an easy way around research problems." *Id.* "Plaintiffs have the burden
of proving that each class member has suffered significant exposure to PFOA—they cannot
circumvent this requirement by simply relying on assumptions about the general population." *Id.*;
*accord Rink v. Cheminova, Inc*., 203 F.R.D. 648, 661 (M.D. Fla. 2001), *appeal denied as moot*,
400 F.3d 1286, 1297 (11th Cir. 2005). ██████████████████████

---

[9] Even if Plaintiffs were to define membership in the proposed medical monitoring classes by
PFOA levels in blood (which they have not done), such definition would be insufficient for similar
and related reasons. As the Fourth Circuit has held, "[t]he presence of PFOA ... in the plaintiffs'
blood does not, standing alone, establish harm or injury." *Rhodes v. E.I. du Pont de Nemours &
Co*., 636 F.3d 88, 95 (4th Cir. 2011).

███████████████████████████████████████████████████████

Injury is individualized for the Medical Monitoring Classes and certification must be denied.

### 2. Injury Is Individualized for the Property Classes

The same goes for Plaintiffs' proposed Property Classes, which are defined with reference to ownership of residential real property in the Class Areas. *See* Compl. ¶¶ 58, 61. To begin with, whether PFOA is present at any one of the properties in the class area and at what level is itself an individual inquiry that Plaintiffs' experts do not purport to prove on a class-wide basis. *See* Sullivan Rpt. at 5. Plaintiffs' fate and transport expert David Sullivan says "it is neither necessary nor appropriate to model air quality or deposition impacts separately on a location-by-location basis to evaluate dispersion and deposition of APFO from the Saint-Gobain facility." Sullivan Rpt. at 8-9. Quite to the contrary, the "core principle that class actions are the aggregation of individual claims, and do not create a class entity or re-apportion substantive claims," *Asacol*, 907 F.3d at 56, requires Mr. Sullivan to offer an opinion "admissible and sufficient to prove injury in *any individual class member's individual trial*." *Id.* at 54 (emphasis added) (citing *Tyson Foods*, 136 S. Ct. at 1047).

███████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

Moreover, for the reasons set forth above, even if Plaintiffs had a class-wide method of proving PFOA levels throughout the area, merely exceeding a regulatory threshold for PFOA is not itself an injury for the same reasons set forth in Point II.A.1 above.  Dr. Bell's opinion on diminution in value thus fails *Asacol*'s standard of common proof—evidence "admissible and sufficient to prove injury in any individual class member's individual trial."  907 F.3d at 54 (citing *Tyson Foods*, 136 S. Ct. at 1047).

In fact, Dr. Bell acknowledges that the class may contain uninjured members.



But even though his publications advocate a "scientific method" of appraisals as essential to combat "untested or unproven theories presented as scientific fact," *see* Bell (2017); Bell (2016),

███████████████████████

█████████████    As in *Kottaras*, Dr. Bell has "not yet performed a single regression," nor has he described "the precise analyses he intended to undertake."  281 F.R.D. at 26.  Dr. Bell has offered only a "bald, unsupported assertion that this method will work."  *Randolph*, 303 F.R.D. at 698.  This "amounts to no damages model at all, and the class cannot be certified."  *Ohio Pub. Employees*, 2018 WL 3861840, at *19 (citation omitted).

Finally, Plaintiffs cannot save their bid for certification through Dr. Bell's opinion that he could develop a method "to determine an aggregate loss" in property value to the entire class, which would then be "allocated to property owners."  Bell Rpt. at 9, 11.  The First Circuit rejected this precise framework for class-wide injury in *Asacol*, holding that it violates "the core principle that class actions are the ***aggregation of individual claims***, and do not create ***a class entity*** or re-apportion substantive claims."  907 F.3d at 56 (emphasis added).  As in *Asacol*, "the aggregate damage amount is the sum of damages suffered by a number of individuals, such that proving that the defendant is not liable to a particular individual because that individual suffered no injury reduces the amount of the possible total damage."  *Id.* at 55.  In contrast, evidence about the percentage of the putative class that was injured, or the total amount of injury to the putative class, is not "admissible and sufficient to prove that any given individual class member was injured."  *Id.* at 54.  It is not common evidence and cannot salvage Plaintiffs' request for class certification.

### B.  Liability Is an Individualized Question

Notwithstanding Plaintiffs' oversimplified charge that Saint-Gobain's alleged "liability [is] based on the same conduct" toward the whole class, *see* Mot. at 2, its liability to the members of the putative classes here is irreducibly individualized.  As the Tenth Circuit held in *Boughton*, issues of "liability may differ depending upon where individual plaintiffs reside."  65 F.3d at 827.  There, the Tenth Circuit affirmed the trial court's finding that individual issues predominated in

an environmental medical monitoring class action involving radioactive waste because "[p]laintiffs allege that their injuries derive from more than one source, and questions of injuries and liability may differ depending upon where individual plaintiffs reside." *Id.* at 826. Likewise, in *Ball*, the Sixth Circuit held that certification was properly denied in a similar environmental medical monitoring action since, among other things, "[e]ach individual's claim was … necessarily proportional to his or her exposure to toxic emissions or waste," and "depended on their period of residency" within the class area. 385 F.3d at 728.

Here, determining whether Saint-Gobain is liable for PFOA in this case embraces at least three separate questions: (1) whether and how much of a given individual's property PFOA exposure is attributable to Saint-Gobain; (2) whether a given individual's personal PFOA exposure is attributable to Saint-Gobain; and (3) whether Saint-Gobain had a culpable state of mind in relation to any exposure that may be attributed to it. Each question is inherently individualized.

### 1.   The Source of Property Exposure to PFOA Is Individualized

Proving liability would require "individualized determinations as to whether each class member had actually ingested" water containing PFOA from Saint-Gobain's facility, "with all the attendant difficulties noted above of making such factual determinations in the absence of written documentation." *Perez v. Metabolife Int'l*, 218 F.R.D. 262, 271 (S.D. Fla. 2003); *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *6 (D.N.J. 2018). Plaintiffs say "there is a single entity that is the source" of PFOA, *see* Mot. at 22, but their own expert disagrees. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ Indeed, because the State of New Hampshire has filed suit against PFOA producers in relation to sites around the State without any connection to Saint-Gobain, the likelihood of alternative sources is unmistakably clear.

29



TCI's Manchester facility is located near certain of the municipal water wells at issue here in which PFOA was detected.  NHDES PFAS Sampling Map.  TCI's Amherst facility, which is less than 8 miles from the proposed class area here, is also subject to a putative class action prosecuted by the same Plaintiffs' counsel.  *See Hermens v. Textiles Coated Inc.*, No. 216-2017-cv-524, slip. op. at 12 (N.H. Super. Ct. Mar. 16, 2018).

Moreover, Mr. Sullivan cites a 2017 report from NHDES that identifies at least thirteen other entities as potential sources of PFOA in the Merrimack area. Sullivan Rpt. at Ref. 30;                            .  Saint-Gobain thus has numerous individualized challenges to the source of PFOA based on many additional contributory sources, including airports and fire stations in the class area that used fire-fighting foam that

contained PFOA.  Determining whether and how much these alternate sources contributed to PFOA levels at any given location is necessarily an individualized inquiry.

As a result of these challenges, Plaintiffs and the putative class "could well have experienced different levels … , implying different damages, caused by different" entities, making the question of source of property exposure to PFOA individualized.  *Parko*, 739 F.3d at 1085. Because "groundwater does not move in a predictable fashion, and the plaintiffs themselves have submitted evidence in support of their motion showing that the levels of [PFOA] in the water of the … named plaintiffs are dramatically different," there are individualized questions of when and how PFOA "traveled to each of the plaintiffs' properties and whether there is another source." *Martin v. Shell Oil Co*., 198 F.R.D. 580, 592 (D. Conn. 2000).  Although "[c]ommon evidence may offer one potential source[,] … many other explanations may exist that are specific to a particular property," *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 307 (S.D. Ala. 2006), making "a property-by-property inquiry … necessary." *Id.* at 305 n.70.  Even for chemicals like PFOA that "do not appear in nature," "there are myriad explanations unrelated to [the defendant] for why they might be found at a given location," especially where the chemical was used "extensively" over a long period.  *Id*.  Property source of PFOA is thus individualized.

## 2.  The Source of Personal Exposure to PFOA Is Individualized

Determining liability not only requires consideration of other sources of PFOA in groundwater at each property, but also consideration of other sources of personal exposure to PFOA for each putative class member.  First, individuals may have been exposed to water with PFOA at places other than their homes, such as those who drank water at work.  And second, because PFOA is ubiquitous, there is a high likelihood that each individual has unique personal exposure to PFOA from sources other than Saint-Gobain.

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████. PFOA is widely found in, amongst other products, non-stick cookware, stain-resistant carpets and fabrics, water repellant clothing, and food packaging. *See* EPA, PFAS. As a result, more than 90% of Americans have detectable levels of PFOA in their blood. *See* EPA, PFOA at 9, 27; NHANES 4th Rpt. ████████████████████

██████████████████████████████████████████████████

████████████ This not only poses the problem of eliminating any background levels of exposure from personal exposure here—which Plaintiffs' experts have not proposed any method to accomplish—but also suggests that an individual's exposure may be partially or wholly attributable to sources other than Saint-Gobain. Thus, for example, public health authorities have found that significant numbers of individuals have had occupational exposure to PFOA. *See* Vermont DOH. ██████████████████████████████████████

███████████████████████████████████ Even Plaintiffs' expert Dr. Grandjean admits that different individuals in the putative class area may have different levels of exposure based on biological factors or individual activities over the class period. *See* 4/22/19 *Sullivan* Tr. at 104:22-106:22, 107:17-108:2. Because of this, federal guidelines assume that nearly 80% of an individual's exposure to PFOA comes from sources other than water. *See* EPA, PFOA at 10.

### 3. Proof of State of Mind Is Individualized

Third, even for exposures attributable to Saint-Gobain, it is not liable absent a showing of a culpable state of mind—whether negligence, strict liability, or intentional conduct. *Mertens v. Abbott Laboratories*, 99 F.R.D. 38, 42 (D.N.H. 1983). Plaintiffs say, without support, that "Saint-Gobain's standard of care was not different for persons in Bedford than in Litchfield," Mot. at 23, but it is hornbook law that questions of liability in tort depend upon foreseeability, which is often

location-specific.  *See Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339 (1928).  Even under a theory

of strict liability, determining whether something is an abnormally dangerous activity depends

upon foreseeability.    *See* Restatement (Third) of Torts § 20(b) (2010).    But foreseeability

necessarily varies according to time and context, and "there is nothing to show that knowledge at

a given point in time essentially settles anything with respect to liability to a particular claimant."

*Mertens*, 99 F.R.D. at 42.  Since the times at which putative class members may have been exposed

to PFOA will necessarily vary, Plaintiffs will be required to prove Saint-Gobain's knowledge at

the time relevant to each putative class member.  *See id.*; *see also In re Myford Touch Consumer

Litig.*, 2016 WL 6873453, at *3 (N.D. Cal. 2016); *Rosales v. Unifund CCR Partners*, 2008 WL

4976223, at *3 (N.D. Ill. 2008).  They cannot do so without numerous individual showings.

### C.  Damages Is an Individualized Question

#### 1.  The Need for Monitoring Is Individualized

██████████████████████████████████████████████████████████

██████████████████████████    As a result, the criteria for damages on a medical monitoring

claim—i.e., the existence of a reasonably necessary monitoring program—are also individualized.

As an initial matter, Plaintiffs fail to set forth any medical monitoring program that,

according to them, would apply in this case.  Instead, Plaintiffs' expert, Dr. Bartell, provides a

generalized listing of procedures that ***could*** be used to screen for warning signs of diseases.  Bartell

Rpt. at 22-23.  Likewise, Dr. Grandjean opines only that various monitoring and screening

procedures are available to monitor for diseases such as cholesterol, cancer, and cardiovascular

disease.  Grandjean Rpt. at 61.  ████████████████████████████████████

██████████████████████████████████████████████████████████

██████████    They do not even address the proposed monitoring program for the class in the

aggregate, much less provide sufficient evidence to support the need for monitoring "'in ***any***

*individual class member's* individual trial.'" *Asacol*, 907 F.3d at 54 (emphasis added) (citing *Tyson Foods*, 136 S. Ct. at 1047). As one of Plaintiffs' cases held in denying certification, such "bare bones" reports are not enough to address "the significant conceptual, implementation, or data issues" for a damages opinion. *See In re Dial Complete Mktg. & Sales Practices Litig.*, 312 F.R.D. 36, 78 (D.N.H. 2015); *Weiner*, 2010 WL 3119452, at *7.

But even if Plaintiffs were to clarify their nebulous monitoring program proposal, they cannot get past the fact that the need for monitoring "is an individualized inquiry depending on that patient's medical history, … the patient's risk factors …, the patient's general health, … and other factors." *St. Jude*, 425 F.3d at 1122. Thus, class certification is properly denied where individual members of the putative class need "to undergo exactly the same diagnostic screening and tests" for reasons other than the alleged exposure. *Perez*, 218 F.R.D. at 272. For example, if a screening test is already indicated as routine care based on an individual's medical condition or other demographic characteristics, then there is no warrant for medical monitoring. *See id.*

This also creates related individual issues for those putative class members who have pre-existing conditions or risk factors that make additional monitoring unnecessary. ▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋ Here, several named Plaintiffs already receive medical treatment or monitoring for conditions that Plaintiffs' experts suggest are caused by exposure to PFOA. *See* Bartell Rpt. at 22-23; Grandjean Rpt. at 61. ▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████   Thus, "[g]iving all class members a right of access to the same uniform monitoring program would allow these high-risk individuals to obtain free medical tests that the medical community would normally recommend for them in the absence of exposure." *Perez*, 218 F.R.D. at 272.

Plaintiffs also entirely ignore the fact that subjecting each putative class member, including those who are at no health risk relating to their alleged PFOA exposure, to inherently unreliable and invasive testing is potentially harmful to those individuals' mental and physical health. Proposed monitoring could "be contraindicated and potentially risky," and, as such, common evidence cannot "prove the medical necessity of plaintiffs' proposed monitoring regime without further individual proceedings to consider class members' individual characteristics and medical histories and to weigh the benefits and safety of a monitoring program." *Gates*, 655 F.3d at 269.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████   Plaintiffs' failure to address these considerations on either a common or an individual basis further warrants denial of their motion.

### 2.   Diminution in Value Damages Are Individualized

There can be "no dispute that computation of damages will inevitably be a property-specific enterprise." *Fisher*, 238 F.R.D. at 308.   "[I]ndividual proximate cause issues will permeate a diminution in value analysis because of the many diverse communities encompassed within the proposed class area." *Cotramano v. United Techs. Corp.*, 2018 WL 2047468, at *20 (S.D. Fla. 2018).   Plaintiffs do not "account for numerous individual characteristics of the homes and surrounding neighborhoods, which are not uniform throughout the proposed class," and have not attempted to address them through "real-world market evidence, even for the class representatives." *Id.* at *19.   ███████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████   In light of the "undeveloped state of plaintiffs' proposed" methods, they have failed to demonstrate that their proffered methods of proof "could sufficiently measure damages across the entire proposed class." *Miller*, 2015 WL 7776794, at *22.   Without some "realistic means of proof, many resources will be wasted setting up a trial that plaintiffs cannot win." *In re New Motor Vehicles*, 522 F.3d at 29.   A class damages expert must, at minimum, show "that damages are capable of measurement on a class-wide basis." *Comcast*, 569 U.S. at 34.   ████████████████

██████████████████████████████████████

### III.   PLAINTIFFS FAIL RULE 23(B) STANDARDS FOR DAMAGES AND INJUNCTIVE CLASSES

### A.   Plaintiffs Cannot Meet Rule 23(b)(3) Requirements for a Damages Class

That every element of Plaintiffs' claims is individualized prevents Plaintiffs from satisfying the Rule 23(a)(2) requirement of common questions.   It thus necessarily also frustrates the "far

more demanding" Rule 23(b)(3) requirement of a predominance of common issues, *Amchem*, 521 U.S. at 624, which tests whether dissimilarities in claims preclude resolution "in a manner that is not inefficient or unfair." *Asacol*, 907 F.3d at 51-52 (internal citation and quotation marks omitted). Here, certification would be both inefficient, inviting "a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues," and also unfair, since it would "do away with the rights a party would customarily have to raise plausible individual challenges on those issues." *Id*.

The predominance of individual issues in environmental tort matters is fatal to certification. Tellingly, every federal appellate court to address the question has rejected certification of a medical monitoring class action. *Barnes*, 161 F.3d at 130; *Gates*, 655 F.3d at 265; *Ball*, 385 F.3d at 728; *In re St. Jude*, 425 F.3d at 1120; *In re St. Jude*, 522 F.3d at 840; *Zinser*, 253 F.3d at 1196; *Boughton*, 65 F.3d at 825-26. Nor has any federal appellate decision since *Dukes* approved certification of a property damage class action under Rule 23(b)(3). *See Gates,* 655 F.3d at 255*; Parko*, 739 F.3d at 1083; *Ebert*, 823 F.3d at 472. The result should be no different here.

Likewise, in light of the manageability problems posed by Plaintiffs' claims, a class action is not superior to individual suits regarding these claims. *See* Fed. R. Civ. P. 23(b)(3). At the outset, this putative class shares a close geographical nexus with the *Hermens* putative class action against TCI that dooms a finding of superiority under Rule 23(b)(3). Just to begin the first step of identifying class members here would also require identifying whether they may also be members of the *Hermens* class by virtue of having ever lived in Amherst. And for individuals who are members of both classes covering the same alleged need for medical monitoring from PFOA exposure, the Court would have to decide which proceeding would dispose of their claims and how to reconcile competing class notices and opt-out procedures. *See* Fed. R. Civ. P. 23(c)(2).

Even if the Court could progress beyond these problems caused by overlapping class actions, the many individual issues outlined above preclude a finding of superiority for the proposed exposure class.  "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'"  *Zinser*, 253 F.3d at 1192.  Plaintiffs' one-size-fits-all approach is not superior to the individualized monitoring relief putative class members may wish to seek—properly—based on any present alleged injuries they attribute to PFOA.  As other courts have observed, "[c]lass members may wish to seek a monitoring program that is tailored, under the advice of their own physicians, to their individual preferences and unique medical histories."  *Fosamax*, 248 F.R.D. at 402.  This is especially true where, as here, "[n]o medical association has recommended" the proposed program, such that "[t]here is an insufficient basis to believe that all class members would prefer the proposed monitoring program."  *Id.*

In addition, the value of the claims precludes a finding of superiority.  The Supreme Court has recognized that medical monitoring is a "costly remedy."  *Metro-N. Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 442 (1997) (citation omitted).  ███████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

"Where the amount of damages available to each plaintiff is high, each individual has a substantial interest in proceeding independently and thereby controlling the prosecution of his case."  *Clark v. State Farm Mut. Auto. Ins. Co.*, 245 F.R.D. 478, 489 (D. Colo. 2007), *aff'd*, 590 F.3d 1134 (10th Cir. 2009).  Because these claims "may well be sizable enough for individual (or joined) suits to be a feasible alternative to a class action," a class action is not superior.  *Parko*, 739 F.3d at 1086.

Thus, "there are other tools available" to address the issues alleged by Plaintiffs. *Asacol*, 907 F.3d at 56.  Denying class certification does not preclude individual suits—indeed, such claims are proceeding both in this Court per the *DeBlois* Plaintiffs, Dkt. 101 at ¶¶7, 56, and in the state courts in two related actions remanded by this Court.  *Albert-Brown, et al., v. Saint-Gobain Performance Plastics Corp., et al.*, No. 216-2018-CV-00120 (N.H. Super. Ct., Hillsborough Cty. (North) 2018); *Dowling, et al. v. Saint-Gobain Performance Plastics Corp., et al.*, No. 226-2018-CV-00071 (N.H. Super. Ct., Hillsborough Cty. (South) 2018).  In addition, "[r]egulators may sue" and "governments may bring parens patriae claims," *Asacol*, 907 F.3d at 56, as the State of New Hampshire has done in its own litigation about PFOA (though not with respect to Saint-Gobain). In light of these other methods to address these claims, the Court need not—and should not—deprive Saint-Gobain of its right to an individualized defense by granting class certification.

### B.  Plaintiffs Cannot Meet Rule 23(b)(2) Requirements for an Injunctive Class

Plaintiffs cannot circumvent the problem of individual inquiries for injury for their proposed Medical Monitoring Classes by seeking certification under Rule 23(b)(2).  Certification of an injunctive class is permitted only when "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Thus, as the Supreme Court held in *Dukes*, Rule 23(b)(2) "applies only when a single injunction or declaratory judgment would provide relief to each member of the class"—not "when each individual class member would be entitled to a different injunction."  564 U.S. at 360 (citations omitted).  Of the many considerations relevant to whether an individual putative class member is entitled to a hypothetical medical monitoring injunction, most fundamental is an injury—which Plaintiffs seek to recover based on alleged exposure and increased risk—to be remedied by that injunction.  Courts have repeatedly denied Rule 23(b)(2) certification of medical monitoring classes due to precisely this issue—a lack of "cohesiveness" within the class with respect to entitlement to injunction.

*Barnes*, 161 F.3d at 142-43; *Gates*, 655 F.3d at 263-64; *St. Jude,* 425 F.3d at 1122; *Barraza v. C.R. Bard Inc.*, 322 F.R.D. 369, 389 (D. Ariz. 2017); *Zehel-Miller v. AstraZeneca Pharms., LP,* 223 F.R.D. 659, 664 (M.D. Fla. 2004); *In re Prempro*, 230 F.R.D. 555, 569 (E.D. Ark. 2005); *In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 211-12 (D. Minn. 2017).  The same is warranted here.

Finally, injunctive certification under Rule 23(b)(2) is also improper because Plaintiffs seek monetary relief—i.e., "damages in the form of the cost of diagnostic testing."  Mot. at 8; Compl. ¶ 55.  *Dukes* holds that a class cannot be certified under Rule 23(b)(2) "at least where … the monetary relief is not incidental to the injunctive or declaratory relief."  564 U.S. at 360. Although Plaintiffs have not identified the parameters of the medical monitoring program they seek, their request to establish "a reserve fund for past and future damages, compensation for future medical treatment, plus other compensatory and punitive damages," renders any injunctive relief "merely incidental" to damages.  *Zinser*, 253 F.3d at 1196; *accord Boughton*, 65 F.3d at 827; *St. Jude*, 425 F.3d at 1121-22; *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 144-45 (E.D. La. 2002); *Lewallen v. Medtronic USA, Inc.*, 2002 WL 31300899, at *3 (N.D. Cal. 2002); *Barraza*, 322 F.R.D. at 385-86; *accord In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 72-74 (S.D.N.Y. 2002).  Rule 23(b)(2) is inapplicable.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for class certification should be denied.

Dated:  July 16, 2019

Respectfully submitted,

/s/ *Jeremy T. Walker*
Bruce W. Felmly (N.H. Bar No. 787)
Jeremy T. Walker (N.H. Bar. No. 12170)
**MCLANE MIDDLETON, P.A.**
900 Elm Street
Manchester, NH 03101
Direct:  (603) 628-1448
Fax:  (603) 625-5650
bruce.felmly@mclane.com
jeremy.walker@mclane.com

Sheila L. Birnbaum (*Pro Hac Vice*)
Mark S. Cheffo (*Pro Hac Vice*)
Bert L. Wolff (*Pro Hac Vice*)
Rachel Passaretti-Wu (*Pro Hac Vice*)
Lincoln Davis Wilson (*Pro Hac Vice*)
**DECHERT LLP**
1095 6th Ave.
New York, NY 10036
Telephone:  (212) 698-3500
Fax:  (212) 698-3599
sheila.birnbaum@dechert.com
mark.cheffo@dechert.com
rachel.passaretti-wu@dechert.com
bert.wolff@dechert.com
lincoln.wilson@dechert.com

*Attorneys for Defendants Saint-Gobain*
*Performance Plastics Corporation and*
*Gwenael Busnel*

41

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this 16th day of July, 2019, the public version this document was filed through the Electronic Case Filing System of the United States District Court for the District of New Hampshire and will be served electronically by the court to the Registered Participants identified in the Notice of Electronic Filing (NEF) and that a confidential version containing no redactions was served on counsel of record by electronic mail.

Dated:  July 16, 2019                    /s/ *Jeremy T. Walker*
                                         Jeremy T. Walker

42