UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| KEVIN BROWN et al., | ) | Civil Action No. |
| | ) | 1:16-cv-00242-JL |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SAINT-GOBAIN PERFORMANCE PLASTICS CORPORATION; and GWENAEL BUSNEL, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. RANDALL BELL**

Though Defendants' reply brief largely repeats the arguments made in their initial motion, apparently hoping that repetition or more forceful language will somehow lend their erroneous positions more weight, Defendants' misstatement of basic appraisal principles, misunderstanding of the record, and misapplication of the law necessitated this partial response.[1]

***The range of prediction of individual values does not make Bell's unimpaired regressions unreliable.*** Dr. Bell used multiple regression analysis to predict the aggregate unimpaired property values for the 9066 properties he studied. *See* Def. Ex. 10, Bell 2020b Rpt. at 85-108. Defendants do not seem to dispute that Dr. Bell's unimpaired models reliably predict aggregate values. Nor can they. The statistics of his regression models show that the aggregate values they determine are highly reliable. *See* Dkt. 377. Plaintiffs cited a plethora of literature supporting this point, which Defendants cannot credibly dispute.

Instead, Defendants focus on how the models predict individual values, claiming that Bell's unimpaired regressions predict a property's unimpaired value at the "most narrow point" with a +/- 26% accuracy. *See, e.g.,* Dkt. 392 at 2, 21-23 (citing Hamilton). But Hamilton provides no support for this opinion, which is both wrong and besides the point.

Both unimpaired regressions have a 95% confidence interval, the adequacy of which is not in dispute. By definition, this 95% confidence interval means that there a 95% probability that a property's predicted unimpaired value will be *within* +/- two standard deviations. *See* Ex. 40, Bell (2016) at 164. In other words, the prediction error at any given point is *not* a static +/- 26%, as Defendants claim. In actuality, it averages to -2.1%, with a median error of nearly zero (-0.1%).

The residuals analysis drives this point home. Bell compared 2807 actual property sales to

---

[1] Plaintiffs also correct an inadvertent scrivener's error in their Opposition, Dkt. 377 at 1. "Trillion" should have been typed as "billion," as Plaintiffs' cited authority shows.

what the model predicted as each property's unimpaired value, ***testing all of the data.*** The difference between those two values is called a residual and the below histogram, which defense expert Hamilton created, visually depicts the residuals for Bell's unimpaired single family regression. Ex. 16, Hamilton Rpt. at 61.




Here, the standard error (which is also the standard deviation for the residuals) is 14%, which is very low. *See* Def. Ex. 10, Bell 2020b Rpt. at 97; Dkt. 377; Dkt. 395. The histogram shows that Bell's unimpaired SFR regression predicts more than 78% of the unimpaired property values within +/- 1 standard deviation (+/- 14%) and more than 95% of the unimpaired property values within +/- 2 standard deviations (+/- 28%), well within industry standards. *See* Def. Ex. 10, Bell 2020b Rpt. at 95 (citing Jackson (2018)); *see also* Dkt. 377, Dkt. 395. Defendants do not tell the Court that their critique is focused on an exceedingly small percentage of the data at each end of the model and that the vast majority of Bell's unimpaired value predictions are very precise.

The statistics show that Bell's unimpaired models reliably predict aggregate values. *See* Dkt. 377. Although Defendants complain that the models are unreliable for predicting individual values, that a model is less reliable when predicting a small number of values at the extremes does not make the model *unreliable*. Nor do Defendants cite any literature or case that says this range

around the individual values makes Bell's multiple regression analysis unreliable for aggregate *or* individual values. Their argument that the model's variability in predicting a few individual values swallows up Bell's predicted diminution-in-value percentages also misses the mark. At trial, Plaintiffs will seek an *aggregate diminution-in-value* based on Bell's reliable unimpaired aggregate valuation. That award will then be distributed fairly amongst the individual class members, likely based on recent relative tax assessed values that class members already had the ability to challenge. There are no uninjured class members here.

***Bell complied with USPAP SR5-7(b) and appropriately "tested" his unimpaired regressions.*** Defendants misunderstand USPAP SR5-7(b) and what Bell did. *See* Dkt. 392 at 22-3. SR5-7 identifies several ways an appraiser can "evaluate the performance of models" to ensure that "on an overall basis, [they] produce value conclusions that meet attainable standards of accuracy." Def. Ex. 35, USPAP at Stnd. 5, p. 37. Exemplary techniques include "goodness-of-fit statistics" and "analysis of residuals," *id.,* both of which Dr. Bell used. R-squared, p-values, p-stats, standard deviations, and standard error are goodness of fit statistics that he evaluated and explained: all are well-within industry standards. Def. Ex. 10, Bell 2020b Rpt. at 89-98, 99-107; *see also* Dkt. 377 at 13-15 (citing literature). Bell's report and workfile evidence his analysis of the models' residuals which, as discussed above, tested every actual sale against the model's predicted unimpaired value for that property—something Defendants erroneously claim he did not do. Dkt. 392 at 21-23.

***Bell did test whether the Class Area properties experienced a diminution in value.*** Bell tested whether the Class Area properties experienced a diminution-in-value using a paired sales analysis, which employed actual market data. *See* Def. Ex. 10, Bell 2020b Rpt. at 188-196. Defendants' brief does not explain what else they think Bell should have done to "test" his work

or point to any authority that says so. And neither Hamilton's simple regression nor Phillips' paired sales analysis actually "tested" Bell's work, either: instead, they violate appraisal standards, assume market awareness when it does not exist, and ultimately tell us nothing about Bell's analysis. *See* Dkt. 395 at 26-62.

**Defendants misunderstand what it means to "test" an expert's opinion under *Daubert.*** Whether an expert's "theory or technique" can be or has been tested is a non-exclusive *Daubert* consideration. *Daubert v. Merrell Dow Pharm, Inc.,* 509 U.S. 579, 593 (1993). Defendants turn this optional criterion on its head by re-defining Bell's conclusion (diminution-in-value caused by PFOA contamination) as his "theory," then arguing that under *Daubert* Bell's *conclusion* has to be tested and found "accurate" before his opinions pass muster. But whether Bell's *conclusions* are correct is a jury issue, not a *Daubert* question. *See Ruiz-Troche v. Pepsi-Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998). In the context of mass appraisal and multiple regression methodologies, "testing" does not and cannot mean what Defendants claim it does, and they do not point to any factually-similar case that says otherwise. Nor can there be any dispute that mass appraisal and multiple regression are generally accepted, "tested" methodologies.

Dated: May 9, 2022

Respectfully submitted,

*/s/Kevin S. Hannon*
Kevin S. Hannon, Esq. (NH Bar #269896)
THE HANNON LAW FIRM, LLC
1641 North Downing Street
Denver, CO 80218
(303) 861-8800
khannon@hannonlaw.com

Paul M. DeCarolis, Esq. (NH Bar #596)
GOTTESMAN AND HOLLIS, PA
39 East Pearl Street
Nashua, NH 03060
(603) 889-5959

pdecarolis@nh-lawyers.com

John A. Yanchunis (Pro Hac Vice)
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
(813) 223-5505
jyanchunis@forthepeople.com

Kenneth J. Rumelt (Pro Hac Vice)
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
1641 North Downing Street
Denver, CO 80218
(303) 264-1766
krumelt@forthepeople.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed through the ECF System and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/Kevin S. Hannon*
Kevin S. Hannon